J-A15046-17

2017 PA Super 286

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BARRY E. GROVE | |
| Appellant | No. 358 MDA 2017 No. 1158 MDA 2017 |

Appeal from the PCRA Order entered July 12, 2017
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0000873-2013

BEFORE: MOULTON, J., SOLANO, J., and MUSMANNO, J.

OPINION BY SOLANO, J.: **FILED AUGUST 31, 2017**

Appellant Barry E. Grove appeals from the portion of an order that denied in part his petition for relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. We affirm.

In 2014, Grove was convicted of one count of cruelty to animals, 18 Pa. C.S. § 5511(a)(2.1)(A), for shooting his dog and leaving it to die. He also was convicted of violating the Uniform Firearms Act, 18 Pa. C.S. § 6105(a)(1), because a prior conviction made him ineligible to own a firearm. Grove claims that his trial counsel was ineffective in failing to make various arguments as part of his defense against the firearms charge and that he is entitled to a new trial because *ex parte* communications between the trial judge and the prosecutors resulted in his conviction by a tribunal that was not impartial.

Grove shot the dog, named Anne, on April 23, 2013, in his neighbor's yard. He says he did so because the dog had killed his chickens. Grove's neighbor, Sherry McCloskey, called the police. When the police arrived, they found Anne to be severely injured, but still alive, and they euthanized her.

The police checked Grove's criminal history and discovered that he had been convicted of criminal trespass in 1978. Under an amended provision of the Uniform Firearms Act that was in effect in 2013, Grove's 1978 conviction made it unlawful for him to own a gun. Therefore, in connection with the April 23, 2013 incident, Grove was charged with illegal possession of a firearm, in addition to the charge of cruelty to animals for the shooting of Anne. The trial court severed the two charges.

The criminal proceedings were held before the Honorable Bradley Lunsford of the Court of Common Pleas of Centre County. On December 9, 2013, Grove moved in *limine* for the trial court to preclude the Commonwealth from providing any details regarding the animal cruelty charge at his jury trial on the firearms charge. Thereafter, on January 8, 2014, and January 15, 2014, Grove filed an original and amended motion to dismiss the firearms charge on the grounds that: (1) he was not prohibited from possessing a firearm at the time of his 1978 conviction; (2) he received no notice when the law was amended to make him ineligible to own a gun in 1995; and (3) that 1995 amendment should not apply to him retroactively. On January 23, 2014, one day before Grove's scheduled jury trial, Judge Lunsford entered an order denying Grove's motions to dismiss. At that same

time, Judge Lunsford granted a motion by the Commonwealth to preclude Grove from presenting a defense to the firearms charge based on his ignorance of the law.

In light of the trial court's rulings, Grove waived his right to a jury trial and proceeded to a bench trial before Judge Lunsford on the firearms charge on January 24, 2014. That same day, the trial court entered a verdict of guilty on that charge. On February 20, 2014, the court imposed a sentence of five to ten years' imprisonment for Grove's conviction on the firearms charge. On March 12, 2014, Grove pleaded guilty to one count of cruelty to animals. That same day, Judge Lunsford sentenced him to nine months to two years' imprisonment on that charge, consecutive to his sentence for the firearms charge. Grove filed a timely post-sentence motion, raising the same claims that he presented in his pretrial motion to dismiss and his motion in *limine*. On June 12 and 16, 2014, the trial court conducted hearings on Grove's post-sentence motion, and on June 16, 2014, it denied that motion.

Grove filed a timely direct appeal from his judgment of sentence for the firearms conviction. In that appeal, Grove claimed that: (1) his prosecution constituted an improper retroactive application of the law; (2) his prosecution constituted an *ex post facto* application of the law; (3) the punishment for his crime was cruel and unusual punishment; (4) his prosecution for the firearms violation contravened due process because Grove was not notified of the 1995 amendment to the statute which made

- 3 -

him ineligible to possess a firearm; (5) the retroactive application of that 1995 amendment stripped Grove of his constitutional right to bear arms; (6) the trial court erred in concluding that the Commonwealth was not required to prove Grove knew his possession of a firearm was prohibited; (7) the trial court erred in granting the Commonwealth's pre-trial motion *in limine*; (8) the trial court erred in denying Grove's request for jury instructions, thus precluding him from offering a defense that he was unaware he was violating the Uniform Firearms Act; and (9) the trial court abused its discretion in denying Grove bail following his conviction.

On July 28, 2015, this Court affirmed the judgment of sentence. We held that Grove's first, second, third, sixth, seventh, eighth, and ninth claims were meritless. ***Commonwealth v. Grove***, 1135 MDA 2014, at 10-20, 23-38 (Pa. Super. July 28, 2015) (unpublished memorandum), ***appeal denied***, 130 A.3d 1287 (Pa. 2015). We held that Grove's fourth and fifth claims (due process and right to bear arms, respectively) were arguably waived because they were inadequately developed, but added that these claims were also meritless. ***Id.*** at 22-23. On December 11, 2015, the Supreme Court of Pennsylvania denied Grove's petition for allowance of appeal.

Grove filed the instant PCRA petition on October 12, 2016, and amended it on December 27, 2016. Grove claimed that he was denied the right to an impartial tribunal based on alleged *ex parte* communications among Judge Lunsford, Centre County District Attorney Stacy Parks Miller, and members of a social media-based group called "Justice for Anne." In

- 4 -

particular, Grove cited Facebook posts in which "Justice for Anne" activists recounted sending e-mails to Judge Lunsford urging him to impose a harsh penalty and receiving "a very understanding response" from Judge Lunsford. PCRA Pet. at 2; Ex. H.[1] Grove also relied on an affidavit by Judge Lunsford's former court reporter, Maggie Miller, that said Judge Lunsford told her that Parks Miller sent him text messages to complain about his rulings during another criminal trial (the April 2012 trial of Randall Brooks). PCRA Pet. at 6-7; Ex. A. Grove cited records documenting electronic communications between Judge Lunsford and the Grove prosecutors (Parks-Miller and Nathan Boob) from May 30, 2014, through December 5, 2014. PCRA Pet. at 7; Ex. B.[2] Grove also noted that Parks Miller posted comments about him on social media. PCRA Pet. at 8-12.

Grove's PCRA petition also claimed that his trial counsel had been ineffective for failing to (1) move for recusal of Judge Lunsford based on the aforementioned alleged *ex parte* communications; (2) argue that Grove was not, as a matter of law, disqualified from possessing a firearm; (3) raise an

---

[1] Other posts indicate that Judge Lunsford asked the activists to stop sending him messages about Grove. **See** Ex. H to PCRA Pet.

[2] The records had been compiled in response to requests made in December 2014 and February 2015, under the Pennsylvania Right to Know Law, 65 P.S. §§ 67.101 to 67.3104. **See** PCRA Pet. at 7. In a later proceeding involving similar requests for communications involving other Centre County judges, the Commonwealth Court held that it was improper for the county to produce such records without first obtaining approval from an appropriate judicial open records officer. **See Grine v. Cty. of Centre**, 138 A.3d 88 (Pa. Cmwlth.), **appeal denied**, 157 A.3d 483 (Pa. 2016).

Equal Protection claim; (4) raise a Second Amendment claim; (5) challenge an incorrect prior record score at Grove's sentencing hearing; (6) challenge the testimony of Sherry McCloskey; (7) present a defense under Section 302 of the Animal Destruction Method Authorization Law, 3 P.S. § 328.302[3]; (8) develop a Second Amendment claim in Grove's direct appeal; (9) present the affirmative defense to the firearms charge under 18 Pa.C.S. § 6105(a)(2)(i) (providing that a person prohibited from possessing a firearm shall have 60 days from imposition of that disability to sell or transfer his firearms); and (10) move to quash the firearms charge on the basis that application of the amended firearms statute to Grove was an unlawful bill of attainder.

On the same day that he filed his initial PCRA petition, Grove filed a motion for discovery that sought evidence relating to (1) *ex parte* electronic communications between Judge Lunsford and Parks Miller or other members of the Centre County District Attorney's Office; and (2) Facebook and other media communications between Parks Miller and members of the public regarding Grove.

On November 22, 2016, the PCRA court, with Clinton County Court of Common Pleas Senior Judge J. Michael Williamson specially presiding,[4] held

---

[3] Section 302 prescribes exceptions to the authorized methods of euthanizing domestic animals.

[4] Judge Lunsford had retired in January of 2016.

a hearing on Grove's motion for discovery. At that hearing, an employee of the Centre County Commissioner's Office, Julie Lutz, testified regarding records of telephone calls and text messages between Judge Lunsford and either District Attorney Parks Miller or Assistant District Attorney Nathan Boob. In addition, Maggie Miller, Judge Lunsford's former court reporter, testified (over a hearsay objection) that during the April 2012 trial of Randall Brooks, Judge Lunsford told her that Parks Miller had been texting him to complain about his rulings in that case. N.T., Nov. 22, 2016, at 67-69. Parks Miller testified, denying Maggie Miller's allegations and denying that she sent Judge Lunsford text messages regarding Grove's case. *Id.* at 103-04, 118-19. Parks Miller further testified that she no longer had the phone she used at the time of Grove's trial. *Id.* at 102-04.

On November 23, 2016, the PCRA court issued an order granting Grove's motion for discovery. The Commonwealth filed a timely notice of appeal from the PCRA court's discovery order, and that appeal was docketed in this Court at No. 1934 MDA 2016. On January 4, 2017, while the Commonwealth's appeal was pending, Grove served a subpoena on former Judge Lunsford to appear and testify at a PCRA hearing on January 11, 2017. Lunsford filed a motion to quash that subpoena, which the PCRA court denied on January 11, 2017. Lunsford filed an appeal from that order, which was docketed in this Court at No. 182 MDA 2017.

The PCRA hearing resumed on January 11, 2017, and included testimony regarding records of telephone communications between Judge

Lunsford and the District Attorney's office. Also at that hearing, Grove's trial counsel testified about Grove's ineffective assistance of counsel claims, and an employee of the Probation and Parole Department testified regarding the calculation of Grove's prior record score. The hearing was adjourned and scheduled to continue on January 25, 2017.

On January 24, 2017, the Commonwealth filed a motion in this Court to stay the January 25 hearing because it would include testimony about some of the same issues as to which the Commonwealth opposed discovery in the appeal it had filed from Judge Williamson's November 23, 2016 order. We granted the Commonwealth's motion that same day.

On January 25, 2017, Judge Williamson filed an opinion and order dated January 23, 2017 that granted Grove's PCRA petition in part.[5] The court held that trial counsel was ineffective for failing to correct an error in Grove's prior record score at the time of sentencing, and it therefore vacated Grove's sentences for both the gun and animal cruelty convictions and ordered that Grove be resentenced. In light of that disposition, the PCRA court found it unnecessary to address Grove's claims that he was denied the right to an impartial tribunal and that trial counsel was ineffective in failing to successfully move for Judge Lunsford's recusal. The PCRA court denied relief on all of Grove's remaining claims and ordered that Grove be released

---

[5] To avoid confusion, we shall use January 25, 2017 as the date of this order.

from prison and placed on house arrest pending his re-sentencing.[6]

Later on January 25, 2017, the Commonwealth filed an emergency motion to stay the PCRA court's order. The Commonwealth argued that the PCRA court lacked jurisdiction to enter that order while the Commonwealth's appeal from Judge Williamson's November 23, 2016 discovery order was pending, *see* Pa.R.A.P. 1701(a), and while this Court's January 24 stay order was in place. That same day, this Court issued an interim order temporarily staying the PCRA court's January 25, 2017 order and giving

_____

[6] The January 25, 2017 order reads:

> NOW, this 23rd day of January, 2017, for the reasons set forth above, IT IS HEREBY ORDERED as follows:
>
> 1.  Defendant is granted relief with respect to the sentences imposed by Judge Lunsford; those sentences are set aside and the Court Administrator of Centre County is directed to schedule these matters for resentencing.
>
> 2.  In all other respects, the relief requested by Defendant is DENIED.
>
> 3.  Defendant is advised he has the right to appeal from the final Sentencing Order to be entered in the future.
>
> 4.  This Order shall not constitute a final Order for purposes of appeal pursuant to Rule 910 of the Rules of Criminal Procedure until Defendant is resentenced.
>
> 5.  Pending resentencing, Defendant shall be immediately released from incarceration on his own recognizance. Defendant shall be on total house arrest at the residence of his mother and stepfather in Julian, Centre County, Pennsylvania and shall not leave said residence except to undergo medical procedures.

Grove seven days to respond to the Commonwealth's emergency motion. In a timely response, Grove averred that the Commonwealth's appeal of the discovery order was moot in light of the PCRA court's January 25, 2017 order granting partial relief. On February 9, 2017, this Court granted the Commonwealth's motion to stay the PCRA court's January 25, 2017 order pending disposition of the Commonwealth's appeal of the discovery order.

On February 24, 2017, Grove appealed from that portion of the PCRA court's January 25, 2017 order that denied relief other than resentencing. That appeal was docketed in this Court at No. 358 MDA 2017.[7]

On June 20, 2017, we heard argument on the Commonwealth's appeal from Judge Williamson's discovery order (No. 1934 MDA 2016) and Lunsford's appeal from the order enforcing Grove's subpoena (No. 182 MDA 2017). During argument, counsel for the Commonwealth and Grove both agreed that the PCRA court's grant of partial relief made the Commonwealth's appeal moot. We agreed, and on July 5, 2017, we issued a memorandum decision stating that "the PCRA court's January 25, 2017 order has made such a change to this case that, in terms of a mootness analysis under Pennsylvania law, there no longer is such an extant case or controversy as would justify our continuation with this appeal."

_____

[7] On April 10, 2017, we issued a briefing schedule that required Grove's brief to be filed by May 22, 2017. Grove missed that deadline, and on May 24, 2017, the Commonwealth moved to dismiss Grove's appeal. Grove filed his brief later that day. On June 22, 2017, we denied the Commonwealth's motion to dismiss.

***Commonwealth v. Grove***, No. 1934 MDA 2016, at 20 (Pa. Super. July 5, 2017) (unpublished memorandum). However, we also expressed doubts about whether the PCRA court had jurisdiction to enter the January 25, 2017 order in light of the pending appeals and our January 24 stay order. ***Id.*** at 21. To dispel those doubts, we remanded the case to the PCRA court "for the limited purpose of allowing it . . . to either (1) re-enter its January 25, 2017 order, or (2) inform this Court of any reasons why it concludes that it should not do so." ***Id.*** at 22. We explained that if the PCRA court re-entered its January 25, 2017 order, we would quash the Commonwealth's appeal from the discovery order as moot. ***See id.***

On July 6, 2017, the PCRA court stated that it would re-enter its January 25, 2017 order. The reissued order was entered on the PCRA court's docket on July 11, 2017, and served on the parties on July 12, 2017.[8] Consequently, we dismissed as moot the Commonwealth's appeal from Judge Williamson's discovery order. We also dismissed as moot Lunsford's appeal from the order denying his motion to quash the subpoena.

On July 14, 2017, in the instant appeal (No. 358 MDA 2017), we issued an order explaining that the July 12, 2017 PCRA court order superseded the January 25, 2017 order. We further stated:

---

[8] To avoid confusion, we shall use July 12, 2017 as the date of this order. The order reads: "We reenter our Order dated January 23, 2017, filed January 25, 2017." The order therefore incorporates the full text of the January 25, 2017 order.

Because the January 25, 2017 order from which this appeal was taken has been superseded, Grove shall file a new notice of appeal from the July 12, 2017 order if he wishes to continue to litigate the matters advanced in this appeal. If Grove elects not to continue to litigate these matters, Grove shall notify this Court of that fact within 10 days of the date of this order and this appeal will then be dismissed.

Order at ¶ 3, *Grove*, 358 MDA 2017 (Pa. Super. July 14, 2017). We further directed:

Upon receipt of a notice of appeal from the July 12, 2017 order, the prothonotary of this Court shall consolidate that appeal with [the appeal from the January 25, 2017 order], and the briefs already filed in this appeal shall be deemed to apply to both appeals. No further briefing shall be required.

*Id.* at ¶ 5. On, July 24, 2017, Grove filed a notice of appeal from the July 12, 2017 order. That appeal was docketed in this Court at No. 1158 MDA 2017, and we have consolidated it with No. 358 MDA 2017.[9]

In these consolidated appeals, Grove raises the following issues, as stated in his brief:

I. Did the PCRA court err in rejecting [Grove]'s claim that trial counsel was ineffective for conceding that [Grove] had been convicted of an "enumerated offense" under 18 Pa.C.S. § 6105(b)?

II. Did the PCRA court err in rejecting [Grove]'s claim that trial counsel was ineffective for failing to argue that inclusion of Grove's 1978 criminal trespass conviction as an "enumerated offense" violated the Equal Protection Clause of the United

---

[9] Because we have already consolidated the appeals, Grove's motion for consolidation is denied as moot. Grove's motion to consolidate his case with another case raising issues of *ex parte* communications, *Commonwealth v. McClure*, 145 MDA 2017, is denied.

- 12 -

States Constitution and Article I, § 26, of the Pennsylvania Constitution?

III. Did the PCRA court err in rejecting [Grove]'s claim that trial counsel was ineffective for failing to present the affirmative defense set forth in 18 Pa.C.S. § 6105(a)(2)(i)?

IV. Did the PCRA court err in failing to hold an evidentiary hearing on [Grove]'s claim that he had been denied an impartial tribunal due to ex parte communications between prosecutors and the judge presiding over his pre-trial, trial, and post-sentence proceedings?

Grove's Brief at 4-5.[10]

"[I]n reviewing the propriety of an order granting or denying PCRA relief, this Court is limited to ascertaining whether the evidence supports the determination of the PCRA court and whether the ruling is free of legal error." *Commonwealth v. Andrews*, 158 A.3d 1260, 1262-63 (Pa. Super. 2017).

**Jurisdiction**

Before addressing the substance of Grove's claims, we must determine whether we have jurisdiction over these appeals. "This Court may consider the issue of jurisdiction sua sponte." *Commonwealth v. Ivy*, 146 A.3d 241, 255 (Pa. Super. 2016).

_____

[10] In its brief, the Commonwealth argues that the PCRA court erred in granting Grove a new sentencing hearing based on his claim that his counsel was ineffective for not challenging his prior record score at sentencing. Because the Commonwealth has not filed a cross-appeal, we will not address this claim. *See Arcidiacono v. Timeless Towns of the Americas, Inc.*, 526 A.2d 804, 806 n.2 (Pa. Super. 1987) ("An appellee who files no counter-appeal cannot raise issues not raised by the appellant" (citations omitted)).

Generally, this Court has jurisdiction of "appeals from final orders of the courts of common pleas." 42 Pa.C.S. § 742. Rule of Appellate Procedure 341 defines "final order" as, among other things, any order that "disposes of all claims and of all parties." Pa.R.A.P. 341(b)(1). Here, the PCRA court's July 12, 2015 order granted Grove's petition in part and denied it in part, and it ordered that Grove be resentenced. Whether such an order is a final appealable order has been subject to dispute in this Court.

In **Commonwealth v. Bryant**, 780 A.2d 646 (Pa. 2001), a capital case, the Supreme Court of Pennsylvania held that a PCRA order denying claims for relief from conviction but granting a new sentencing hearing was a final order. **Id.** at 647-48. The Court relied on what was then Rule of Criminal Procedure 1510 (now Rule 910), which stated, "An order denying, dismissing, or otherwise finally disposing of a petition for post-conviction collateral relief shall constitute a final order for purposes of appeal."[11] **See Bryant**, 780 A.2d at 648. The Court held that the order "dispose[d] of all claims and of all parties" under Pa.R.A.P. 341(b). **See id.**

Recently, this Court, en banc, addressed whether an order granting a new sentencing hearing and denying all other claims in a PCRA petition is a final order in a non-capital case. **See Commonwealth v. Gaines**, 127 A.3d

---

[11] As renumbered Rule 910, this rule currently provides, "An order granting, denying, dismissing, or otherwise finally disposing of a petition for post-conviction collateral relief shall constitute a final order for purposes of appeal."

15 (Pa. Super. 2015) (*en banc*). No opinion commanded a majority of the Court. Three judges concluded that such an order is appealable. **See id.** at 17-18 (opinion by Judge Mundy, joined by Judges Panella and Lazarus). They cited **Bryant** and relied on Rule of Criminal Procedure 910, explaining:

> The PCRA court granted one sentencing claim and denied all claims for a new trial. As a result, the PCRA court's . . . order ended collateral proceedings and called for a new sentencing proceeding, which is a trial court function, not a collateral proceeding function. Therefore, the PCRA court's order disposed of all of Appellant's claims in his PCRA petition, terminating its role in the proceedings. Under a plain, straightforward application of Rule 910, the PCRA court's order was a final one.

*Id.* at 17 (citation omitted).[12] Three other judges concluded that such an order is not appealable. **See id.** at 22-25 (opinion by Judge Bender, joined by President Judge Gantman and Judge Shogan). They opined that the PCRA court had entered "a hybrid order that is not final for purposes of Pa.R.Crim.P. 910," *id.* at 22, and advanced policy considerations (avoidance of multiple appeals and the prospect of a "waiver trap") to postpone the

---

[12] These judges also relied on Appellate Rule 341(b)(2), which stated that an order is final if it "is expressly defined as a final order by statute." Rule 341(b)(2) was rescinded later in 2015 to "eliminate[] a potential waiver trap created by legislative use of the adjective 'final' to describe orders that were procedurally interlocutory but nonetheless designated as appealable as of right." Pa.R.A.P. 341, Note. Currently, Appellate Rule 311(a)(8) allows an interlocutory appeal as of right from "[a]n order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties."

- 15 -

determination of finality until resentencing. *Id.* at 24-25. They distinguished *Bryant* as "applying only to capital petitioners." *Id.* at 24.[13]

Most recently, in *Commonwealth v. Watley*, 153 A.3d 1034 (Pa. Super. 2016), *appeal denied*, No. 69 MAL 2017, 2017 WL 2538785 (Pa., June 12, 2017), a panel of this Court cited the lead opinion in *Gaines* for the proposition that "an order granting in part and denying in part all issues raised in [the defendant's] PCRA petition was a final order for purposes of appeal." *Id.* at 1039 n.3. In *Watley*, as in *Gaines* and this case, the PCRA court had ordered resentencing (which had not yet occurred), but denied all other relief. *See id.* at 1039. The Court in *Watley* did not discuss whether the pendency of resentencing affected its jurisdiction.[14]

In the absence of an *en banc* resolution of this issue, we conclude that we are bound by this Court's decision in *Watley* and that the PCRA court's order granting relief with regard to sentencing and denying all other claims therefore was a final appealable order. Accordingly, Grove's appeal is properly before us.[15]

---

[13] Of the remaining three judges on the *en banc* panel, one (Judge Allen) did not participate and the remainder concluded that the issue was not properly presented. *See* 127 A.3d at 20-22 (opinion by Judge Donohue joined by Judge Stabile).

[14] The Court noted that the PCRA court had made resentencing "contingent upon lack of a timely appeal in this matter." *Watley*, 153 A.3d at 1039 n.3.

[15] Paragraph 4 of the PCRA court's January 25, 2017 order stated, "[t]his Order shall not constitute a final Order for purposes of appeal pursuant to Rule 910 of the Rules of Criminal Procedure until [Grove] is resentenced."
*(Footnote Continued Next Page)*

- 16 -

**Ineffective Assistance of Counsel (Grove's Claims I-III)**

In his first three claims, Grove alleges that his trial counsel was ineffective for failing to raise certain defenses. In reviewing these claims, we are guided by a well-settled framework:

> Counsel is presumed to have been effective. To overcome this presumption, a PCRA petitioner must plead and prove that: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.

*Andrews*, 158 A.3d at 1263 (quotation marks and citation omitted). "If a petitioner fails to prove any of these [three] prongs, his claim fails." *Commonwealth v. Simpson*, 66 A.3d 253, 260 (Pa. 2013).

The PCRA court found "all of the issues regarding potential defenses to have been finally litigated and not further reviewable on a post-conviction petition[16] and that there was no ineffectiveness of counsel." PCRA Ct. Op.

---

*(Footnote Continued)*

That paragraph continues to apply under the reissued order of July 12, 2017. Nevertheless, the paragraph is not dispositive of our jurisdiction. Whether an order is a final order for purposes of appellate review is a question of law. *Commonwealth v. Scarborough*, 64 A.3d 602, 607 (Pa. 2013). Thus, we do not defer to any pronouncement by a trial court as to whether its order is final or otherwise appealable. *Id.*; *cf. Pullman Power Prods. of Canada, Ltd. v. Basic Eng'g, Inc.*, 713 A.2d 1169, 1173-74 (Pa. Super. 1998) (rejecting trial court's rationale that order at issue was final and appealable because "an immediate appeal . . . would facilitate resolution of the entire case"). Under *Gaines* and *Watley*, accepting the PCRA court's bald assertion would result in either party losing its right to appeal from the partial grant or denial of PCRA relief. *See Gaines*, 127 A.3d at 17-18.

[16] To be eligible for relief under the PCRA, a petitioner must plead and prove, among other things, that his or her "allegation of error has not been
*(Footnote Continued Next Page)*

at 2. The PCRA court noted that most of Grove's claims "emphasize the inherent unfairness and purported unconstitutionality of Grove's prosecution based upon a disabling conviction that occurred prior to the enactment of the current version of [18 Pa.C.S. § 6105]." *Id.*

While we agree with the PCRA court that Grove's claims regarding defenses his counsel did not raise have a common theme, we do not agree that they have been previously litigated. First, "collateral claims of trial counsel ineffectiveness deriving from an underlying claim of error that was litigated on direct appeal cannot automatically be dismissed as 'previously litigated.'" **Commonwealth v. Puksar**, 951 A.2d 267, 274 (Pa. 2008). Second, the defenses Grove now relies upon are distinct from those raised on direct appeal. **Cf. Commonwealth v. Hanible**, 30 A.3d 426, 442 (Pa. 2011) (holding that challenges to sufficiency and weight of the evidence were distinct from due process claim, even though all claims were "premised upon a purported lack of reliability of the evidence supporting the first degree murder conviction"), **cert. denied**, 133 S. Ct. 835 (2013).

Although we disagree with the PCRA court's conclusion that Grove's ineffective assistance of counsel claims have been previously litigated, "we may affirm the PCRA court's decision on any basis." **Commonwealth v.**

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

previously litigated or waived." 42 Pa.C.S. § 9543(a)(3). An issue has been previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue; or . . . it has been raised and decided in a proceeding collaterally attacking the conviction or sentence." *Id.* § 9544(a).

***Williams***, 977 A.2d 1174, 1177 n.8 (Pa. Super. 2009), ***appeal denied***, 990 A.2d 730 (Pa. 2010). As explained below, we hold that the legal claims underlying Grove's ineffective assistance of counsel claims are meritless, and we therefore affirm the PCRA court's decision to deny relief on those claims.

*Conviction of an "enumerated offense" under 18 Pa.C.S. § 6105*

Grove's first and second claims involve amendments to the Crimes Code that made his possession of a gun in 2013 unlawful. To understand Grove's arguments, it is necessary to review the statutory changes.

In 1978, Grove pleaded guilty to violating the criminal trespass statute, 18 Pa. C.S. § 3503(a), by unlawfully entering a State College train station.[17] At the time he committed that crime, the relevant portion of this statute provided:

> **(a) Buildings and occupied structures.–**
>
> (1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or gains entrance by subterfuge or surreptitiously remains in any building or occupied structure, or separately secured or occupied portion thereof.
>
> (2) An offense under this subsection is a felony of the second degree.

---

[17] Grove pleaded guilty to the following count in the criminal information:

> BARRY EARL GROVE, on or about February 18, 1978, . . . knowing that he was not licensed or privileged to do so, did unlawfully and feloniously enter or gain entrance by subterfuge or did surreptitiously remain in the . . . Train Station [on West College Avenue in State College], or separately secured or occupied portion thereof.

Act of December 6, 1972, No. 1972-334, § 1 (enacting 18 Pa. C.S. § 3503(a)), 1972 Pa. Laws 1482, 1534.

Following Grove's conviction, and effective August 22, 1978, Section 3503(a) was amended to read:

**(a) Buildings and occupied structures.–**

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

(i) enters, gains entrance by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; or

(ii) breaks into any building or occupied structure or separately secured or occupied portion thereof.

(2) An offense under subparagraph (i) of paragraph (1) is a felony of the third degree, and an offense under subparagraph (ii) is a felony of the second degree.

Act of June 23, 1978, No. 1978-76, § 1, 1978 Pa. Laws 497 (effective in 60 days).[18] The 1978 amendment made two significant changes. First, it added a separate provision to deal with "breaking into" a building — conduct not separately addressed by the statute before the amendment (and, therefore, conduct of which Grove was not convicted in 1978). Second, it reduced the grading for trespass not involving "breaking into" a building from a second-degree felony to a third-degree felony. Section 3503(a) has

---

[18] Section 3503(a)(3) defined "breaks into" as "[t]o gain entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access."

- 20 -

remained materially unchanged since the 1978 amendment.

Before 1995, the Uniform Firearms Act, 18 Pa.C.S. § 6105, provided, "No person who has been convicted in this Commonwealth or elsewhere of a crime of violence shall own a firearm, or have one in his possession or control." Act of December 6, 1972, No. 1972-334, § 1 (enacting 18 Pa. C.S. § 6105), 1972 Pa. Laws 1482, 1575 (effective June 6, 1973). At that time, Section 6102 of the Crimes Code defined "crime of violence" as, "Any of the following crimes, or an attempt to commit any of the same, namely: murder, rape, aggravated assault, robbery, burglary, entering a building with intent to commit a crime therein, and kidnapping." *Id.* Because Grove's conviction for criminal trespass was not a "crime of violence" under this definition, Grove was not prohibited from owning a firearm under Section 6105 at the time of his conviction of that offense in 1978.

In 1995, the Legislature amended Section 6105 to preclude persons convicted of certain enumerated felonies, not all involving crimes of violence, from possessing or using a firearm. The amendment provided, in relevant part, as follows:

**(a) Offense defined.—**

(1) A person who has been convicted of an offense enumerated in subjection (b), within or without this Commonwealth, regardless of the length of sentence . . . shall not possess, use, control, sell, transfer or manufacture . . . a firearm in this Commonwealth.

* * * *

- 21 -

**(b) Enumerated offenses.**—The following offenses shall apply to subsection (a): . . .

Section 3503 (relating to criminal trespass) if the offense is graded a felony of the second degree or higher.

Act of June 13, 1995, No. 1995-17 (SS1), § 2 (enacting 18 Pa.C.S. § 6105(a)(1), (b)), 1995 (SS1) Pa. Laws 1024, 1026, 1027-28. **See generally Commonwealth v. Gillespie**, 821 A.2d 1221, 1224-25 (Pa. 2003) (discussing purpose of amendment). The relevant provisions of Section 6105 have remained materially unchanged since that time.

The 1995 amendment to Section 6105 meant that if a person was convicted of a second-degree felony for criminal trespass, that person was not permitted to own a firearm. Because Grove was convicted of criminal trespass in 1978 and because all criminal trespass convictions at that time were second-degree felonies, Grove was forbidden from owning a gun under the 1995 amendment. His ownership of a gun at the time he was charged with animal cruelty in 2013 therefore resulted in a firearms charge against him under this provision.

In his first claim, Grove argues that his trial counsel was ineffective for conceding that his criminal trespass conviction in 1978 was an "enumerated offense" that prohibited his gun ownership under Section 6105(b). Grove emphasizes that when Section 6105 was amended in 1995 to include a second-degree-felony criminal trespass as an enumerated offense, the only type of criminal trespass that was graded as a second-degree felony was

that which involved breaking into a building, conduct of which he was not convicted. Grove argues that "the 1995 amendment [of Section 6105] represents a clear legislative judgment that those, and only those, persons convicted of criminal trespass in the form of breaking into a building should be subject to prosecution for possessing a firearm under 18 Pa. C.S. § 6105." Grove's Brief at 43-44. He further argues that inclusion of his 1978 criminal trespass conviction as an "enumerated offense" under Section 6105 leads to an absurd result: a person who committed the same crime as Grove (one not involving breaking into a building) after the criminal trespass statute was amended would not be disqualified from possessing a firearm, but Grove, due to the pre-amendment date of his trespass crime, would be.

The Commonwealth takes issue with Grove's contention that his trial counsel "conceded" this issue, noting that counsel raised a number of issues regarding the impropriety of applying the 1995 amendment to Grove's case. **See** Commonwealth's Brief at 33 ("Defendant's precise claim in his first argument is that Defendant's criminal trespass conviction should not have prohibited him from possessing a firearm — that claim was previously argued by trial counsel, appellate counsel, and fully addressed and rejected on the merits by the Pennsylvania Superior Court on direct appeal"). In his direct appeal, Grove argued that application of the 1995 amendment to his case would make that amendment unlawfully retroactive and would violate constitutional prohibitions of *ex post facto* laws. **See Grove**, 1135 MDA 2014, at 10-13. In rejecting those arguments, we stated, "although Grove

was convicted of criminal trespass 17 years before [Section 6105] was amended, he committed the crime of persons not to possess firearms on April 23, 2013, when he possessed a firearm despite his status as a disqualified felon[;] . . . Grove's prior conviction was simply a condition precedent to the present conviction." *Id.* at 11-12. In reaching this conclusion, we impliedly rejected the argument that Grove now makes regarding the proper interpretation of Section 6105(b). We nevertheless shall examine Grove's statutory argument now because it is not the same as the argument he previously made on direct appeal.

Grove's "enumerated offense" argument raises a question of statutory interpretation. This Court has explained:

> When the question [is] one of statutory interpretation, our scope of review is plenary and the standard of review is *de novo*. Under the Statutory Construction Act of 1972, . . . our paramount interpretative task is to give effect to the intent of our General Assembly in enacting the particular legislation under review. We are mindful that the object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly . . . and the best indication of the legislature's intent is the plain language of the statute. When the words of a statute are clear and unambiguous, we may not go beyond the plain meaning of the language of the statute under the pretext of pursuing its spirit. However, only when the words of the statute are ambiguous should a reviewing court seek to ascertain the intent of the General Assembly through considerations of the various factors found in Section 1921(c) of the [Statutory Construction Act, 1 Pa. C.S. § 1921(c)].

*In re D.M.W.*, 102 A.3d 492, 494 (Pa. Super. 2014) (quotation marks and citations omitted); *accord Commonwealth v. McFadden*, 156 A.3d 299, 305-06 (Pa. Super. 2017).

We conclude that the words of Section 6105 are clear and unambiguous and that they do not support Grove's argument. Section 6105(a) says that an individual may not possess a firearm if he "has been convicted of an offense enumerated in subsection (b)," and Section 6105(b) says that the "offenses [that] shall apply to subsection (a)" include "Section 3503 (relating to criminal trespass) if the offense is graded a felony of the second degree or higher." Grove was convicted of a criminal trespass under Section 3503 that was graded as a felony of the second degree. Under the plain wording of Section 6105, Grove therefore was not entitled to own a gun.

To avoid this result, Grove asks us to interpret Section 6105(b) to apply only to conduct that would result in conviction for a second-degree felony today, rather than at the time the criminal trespass was committed. But the statute does not contain that qualification. Section 6105 speaks of a crime of which the defendant "has been convicted," meaning that it looks to the grading of the offense at the time it was committed. That Grove's criminal trespass would not be a second-degree felony if committed today therefore is irrelevant under the statute; all that matters is that it was a second-degree felony when Grove was convicted in 1978. We therefore conclude, in an analysis of the statutory language similar to that we applied

in Grove's direct appeal, that Grove's conviction of criminal trespass in 1978 disqualified him from possessing a firearm in 2013.[19]

We have found no Pennsylvania case law addressing this question, and Grove has cited us to none. But a decision by the U.S. Supreme Court is on point and, although not binding on this question of Pennsylvania law, provides useful guidance. In **McNeill v. United States**, 563 U.S. 816 (2011), the Supreme Court interpreted the Armed Career Criminal Act, 18 U.S.C. § 924(e) (ACCA), which provides enhanced penalties for individuals who have three previous convictions of "a violent felony or a serious drug offense" under state law. One requirement for a "serious drug offense" under state law is that "a maximum term of imprisonment of ten years or

---

[19] We reject Grove's contention that the 1995 amendment evidences "a clear legislative judgment" to bar gun ownership from "only those[] persons convicted of criminal trespass in the form of breaking into a building." Grove's Brief at 43-44. If that had been the Legislature's intent, it would have listed under Section 6105(b) only the part of Section 3503 dealing with breaking into a building, Section 3503(a)(ii). Instead, Section 6105(b) lists any criminal trespass graded as a second-degree felony, thus including trespasses graded at that level prior to Section 3503's amendment in 1978. We also note that even though the pre-amendment version of Section 3503 did not made "breaking into" a building a separate type of criminal trespass, the broad language of the pre-amendment statute, which made it a crime if someone "enters" a building without permission, encompassed trespasses committed by breaking into buildings. **See Commonwealth v. Pellecchia**, 925 A.2d 848, 849 (Pa. Super. 2007) ("it is axiomatic that an individual cannot break into a building without actually gaining entry or, quite simply, entering it"); **cf. Commonwealth v. Lynch**, 323 A.2d 808, 810 & n.2 (Pa. Super. 1974) (entry of building by force was sufficient to prove unlawful entry under predecessor to Section 3503). If, as Grove contends, the Legislature had a special interest in barring such trespassers from gun ownership, its drafting of Section 6105(b) to reach all those convicted under the pre-amendment version of Section 3503 was the only way it could do so.

- 26 -

more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). Between 1991 and 1994, McNeill was convicted six times of drug trafficking offenses in North Carolina. *McNeill*, 563 U.S. at 818. At the time of McNeill's convictions, the maximum penalty for each of his crimes was ten years' incarceration. *Id.* However, on October 1, 1994, the North Carolina legislature reduced the maximum penalties for those crimes to less than four years. *Id.* In 2008, McNeill pleaded guilty to unlawful possession of a firearm by a felon and was sentenced pursuant to the ACCA. *Id.* at 818-19. McNeill challenged his ACCA sentence, claiming that because the legislature had reduced the maximum penalty for drug trafficking, none of his prior convictions could be considered a "serious drug offense." *Id.*

The Supreme Court disagreed, and held that the amendment to the North Carolina statute did not change the fact that McNeill had been convicted of "serious drug offense[es]" between 1991 and 1994. *McNeill*, 563 U.S. at 820. The Court relied upon the plain language of the ACCA, explaining that the only way to determine whether a defendant has a "previous conviction" for a serious drug offense is to look at the maximum sentence at the time of the conviction for the drug offense. *Id.*

The Court in *McNeill* also explained that its interpretation of the ACCA "avoids the absurd results that would follow from consulting current state law to define a previous offense." *McNeill*, 563 U.S. at 822. For example, consulting current law could lead to a prior conviction disappearing for purposes of the ACCA if a state redefined the offense between the conviction

and the federal sentencing. *Id.* at 823. "A defendant's history of criminal activity — and the culpability and dangerousness that such history demonstrates — does not cease to exist when a State reformulates its criminal statutes in a way that prevents precise translation of the old conviction into the new statutes." *Id.*

Here, the plain language of Section 6105, like the language of the ACCA, focuses on the conviction, and requires us to examine the law in effect at the time of Grove's criminal trespass conviction to determine whether it was a felony of the second degree. *Cf. McNeill*, 563 U.S. at 820. There is no question that at the time Grove was convicted of criminal trespass, his crime was a felony of the second degree. Thus, Grove had a prior conviction for an enumerated offense. As the Court in *McNeill* concluded, any other interpretation would lead to absurd results. *See id.* at 822-23. We therefore find Grove's contention that he was not convicted of an "enumerated offense" under Section 6105 to be meritless.

Because this issue is meritless, Grove's trial counsel cannot be found to have been ineffective for making this argument. Therefore, we agree with the PCRA court that this claim warrants no relief. *See Andrews*, 158 A.3d at 1263.

*Equal Protection*

Grove's second claim is that his trial counsel was ineffective for failing to raise an Equal Protection claim under the federal and Pennsylvania

Constitutions.[20] Grove contends that the inclusion of criminal trespass convictions prior to August 23, 1978, as "enumerated offenses" under the 1995 version of Section 6105 creates two groups subject to radically different treatment. He asserts that individuals who (like Grove) committed criminal trespass by "entering, gaining entry by subterfuge, or surreptitiously remaining in a building" before the 1978 amendment to the trespass statute ("Group I") are prohibited from possessing a firearm under Section 6105, but individuals who committed that same crime after the 1978 amendment ("Group II") are not. Grove thus opines that Section 6105 discriminates against him and others similar situated. That discrimination, he maintains, impacts his fundamental right to bear arms.[21] He asserts that there is no compelling governmental interest in treating the pre- and post-1978 groups differently, and that even if a lesser standard applies, the government has no rational basis for such disparate treatment.

The Commonwealth counters that Grove unsuccessfully litigated this issue on direct appeal and thus is not entitled to relief. Commonwealth's

---

[20] **See** U.S. Const. amend. XIV, § 1 ("No State shall . . . deny to any person within its jurisdiction the equal protection of the laws"); Pa. Const. art. I, § 26 ("Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right").

[21] **See** U.S. Const. amend. II (". . . the right of the people to keep and bear Arms, shall not be infringed"); Pa Const. art. I, § 21 ("The right of the citizens to bear arms in defense of themselves and the State shall not be questioned"). In Grove's direct appeal, we rejected an argument that his conviction violated this right. **See Grove**, 1135 MDA 2014, at 23.

Brief at 38-39. The Commonwealth construes Grove's argument as an assertion that Section 6105 improperly classifies people based on age. *Id.* at 39.[22] Acting on that premise, the Commonwealth argues that Section 6105 did not create an "age classification" and suggests that, under Grove's argument, "*any* criminal statute could be subject to an equal protection challenge" if a defendant "would face less harsh penalties had he committed his crime in a different era." *Id.* at 42 (emphasis in original).

We apply the following standard and scope of review:

Our Court exercises plenary review over questions of law, including the constitutionality of a statute. Further, our Court recognizes that the Equal Protection guarantee under the Pennsylvania Constitution is analyzed under the same standards as the federal constitution. When reviewing the constitutionality of a statute, our Court has reaffirmed that:

there is a strong presumption in the law that legislative enactments do not violate the constitution. Moreover, there is a heavy burden of persuasion upon one who challenges the constitutionality of a statute. While penal statutes are to be strictly construed, the courts are not required to give the words of a criminal statute their narrowest meaning or disregard the evident legislative intent of the statute. A statute, therefore, will only be found unconstitutional if it "clearly, palpably and plainly" violates the constitution.

All doubt is to be resolved in favor of sustaining the legislation.

---

[22] Focusing on "adult convictions," Grove's brief asserts that those in Group I must have reached the age of 18 on or after the date that the criminal trespass statute was amended, and are thus currently over the age of 56; those in Group II are between the ages of 18 and 56. Grove's Brief at 47-48.

- 30 -

***Commonwealth v. Thomas***, 51 A.3d 255, 256 (Pa. Super. 2012) (citations and formatting omitted), ***appeal denied***, 63 A.3d 1247 (Pa. 2013).

"The concept of equal protection requires that uniform treatment be given to similarly situated parties." ***Commonwealth v. Kramer***, 378 A.2d 824, 826 (Pa. 1977).[23] As our Supreme Court said in ***Curtis v. Kline***, 666 A.2d 265 (Pa. 1995):

> The right to equal protection under the law does not absolutely prohibit the Commonwealth from classifying individuals for the purpose of receiving different treatment, and does not require equal treatment of people having different needs. The prohibition against treating people differently under the law does not preclude the Commonwealth from resorting to legislative classifications, provided that those classifications are reasonable rather than arbitrary and bear a reasonable relationship to the object of the legislation. In other words, a classification must rest upon some ground of difference which justifies the classification and has a fair and substantial relationship to the object of the legislation.

***Id.*** at 267-68 (citations omitted). Generally, there are two types of equal protection claims: (1) that the law itself is discriminatory; and (2) that the law itself does not discriminate, but is enforced in a discriminatory manner. ***See Commonwealth v. Lewis***, 279 A.2d 26, 29 (Pa.), ***cert. denied***, 404 U.S. 1003 (1971).

---

[23] ***See Commonwealth v. Bullock***, 913 A.2d 207, 215 (Pa. 2006) ("While the Equal Protection Clause assures that all similarly situated persons are treated alike, it does not obligate the government to treat all persons identically"), ***cert. denied***, 550 U.S. 941 (2007); ***Chem v. Horn***, 725 A.2d 226, 228 (Pa. Cmwlth. 1999) ("In order to properly state an equal protection claim, a plaintiff must allege that he is receiving different treatment from that received by other similarly situated individuals" (citation omitted)).

There is nothing about Section 6105 that in itself is discriminatory for purposes of the first type of equal protection claims. For this type of claim, "before we analyze a statute to determine whether it violates equal protection principles, we must first ask a threshold question[:]" whether the statute at issue "*has created a classification* for the unequal distribution of benefits or imposition of burdens." ***Commonwealth v. Parker White Metal Co.***, 515 A.2d 1358, 1363 (Pa. 1986) (emphasis in original and citation omitted) (rejecting equal protection claim because the provisions at issue "on their face, apply equally and across the board to any and all potential violators of the substantive provisions of the Act"); ***accord Commonwealth v. Barud***, 681 A.2d 162, 166 n.5 (Pa. 1996).

The mere fact that Section 6105 has been amended to change the disqualifying enumerated offenses under it does not in itself give rise to such an unlawful classification. The Supreme Court's decision in ***Kramer*** is instructive. The defendant in that case committed voluntary manslaughter in 1967, when there was no statute of limitations for voluntary manslaughter. ***Kramer***, 378 A.2d at 825-26. On June 6, 1973, a new version of the statute became effective which provided for a two-year statute of limitations for voluntary manslaughter. ***Id.*** at 826. Kramer was indicted in 1974. ***Id.*** at 825. He argued that subjecting him to the law in effect in 1967 denied him equal protection under the Pennsylvania and federal constitutions. ***Id.*** at 826. The Supreme Court of Pennsylvania disagreed, stating, "we can find no violation of equal protection, as all

individuals committing the act of voluntary manslaughter before June 6, 1973, were subjected to no statute of limitations, while all individuals committing the same act after that date must be charged within two years." *Id.*

Here, too, nothing in the amendment to Section 6105 has created any unlawful classification — both before and after its amendment, Section 6105 applies across the board to any and all violators: a person convicted of an enumerated offense shall not possess a firearm. On this basis alone, Grove's discriminatory-law claim fails. *See Parker White Metal Co.*, 515 A.2d at 1363. Conversely, the statute does not "carve out classifications or single out any distinct class of persons for unequal treatment, but by its terms applies equally to all" persons convicted of, among other offenses, criminal trespass. *See id. ; Kramer*, 378 A.2d at 826.

With respect to the second type of equal protection claim, a claim for discriminatory enforcement:

> In order to state an equal protection claim for unequal or discriminatory enforcement the party claiming such discrimination must show that persons similarly situated have not been treated the same and that the decisions were made on the basis of an unjustifiable standard such as race, religion, or other arbitrary classification or to prevent the party's exercise of a fundamental right.

*Correll v. Commonwealth of Pa., Dep't of Transp., Bureau of Driver Licensing*, 726 A.2d 427, 431 (Pa. Cmwlth. 1999) (*en banc*) (citations, brackets, and quotation marks omitted), *aff'd*, 769 A.2d 442 (Pa. 2001)

(*per curiam*).  Furthermore, the discrimination must be "purposeful or intentional." **Lewis**, 279 A.2d at 29.[24]

Grove cannot succeed on a claim that Section 6105 has been enforced in a discriminatory fashion.  He has adduced no evidence that the Commonwealth purposefully or intentionally treated others in his situation differently, that is, that a person who, like Grove, was convicted of criminal trespass before the 1978 amendment was given the benefit of the post-1978 trespass statute.  Grove argues that the change in the criminal trespass law in 1978 created two groups of felons who, under the 1995 amendment to Section 6105, have different privileges of gun ownership, and observes that, because that change occurred nearly 40 years ago, the group that is more disadvantaged ("Group I" in the preceding discussion) is considerably older than the group ("Group II") that is less disadvantaged.  But that does not mean there was unlawful age discrimination.  Any time a statute is amended, those affected by the earlier, pre-amendment version will tend to be older than those affected by the new amendment.  That is merely the natural result of the enactment of laws, and cannot be construed as purposeful or intentional discrimination against the older group.  **See generally Sperry & Hutchinson Co. v. Rhodes**, 220 U.S. 502, 505 (1911)

_____

[24] **See also Goodman v. Kennedy**, 329 A.2d 224, 232 (Pa. 1974) (concluding that although the record established a lack of uniform enforcement of the law at issue, it did not "establish that the lack of uniformity was the result of purposeful discrimination aimed at a particular class of which the appellants were members").

("the 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time").[25]

Nor is there any basis for a claim that the statutory amendment discriminates to prevent exercise of a fundamental right. In recognizing the constitutional right to bear arms in *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008), the U.S. Supreme Court "made clear that the right to keep and bear arms pursuant to the Second Amendment is not absolute, and that 'nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . .'" *Commonwealth v. McKown*, 79 A.3d 678, 688 (Pa. Super. 2013) (quoting *Heller*), *appeal denied*, 91 A.3d 162 (Pa. 2014); *see also McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010). The Pennsylvania Constitution has been interpreted similarly. *See McKown*, 79 A.3d at 690. In Grove's

---

[25] *See also Rondon v. State*, 711 N.E.2d 506, 513 (Ind. 1999) ("Criminal statutes apply exclusively to one class of people, those who violate the law, and they relate to the specific point in time that a violation occurs. Upon alteration of the criminal law, individuals subsequently convicted are not similarly situated and cannot be equated to those previously convicted." (citation and footnote omitted)); *State v. Rush*, 406 S.E.2d 355, 356 (S.C. 1991) (*per curiam*) (explaining that logical conclusion of argument that statutory amendment violated equal protection "would be that once the Legislature had enacted a statute, it could never amend or repeal it without running afoul of the equal protection clause[]"); *Abdo v. Commonwealth*, 237 S.E.2d 900, 903-04 (Va. 1977) ("The fact that the legislature reduces the penalty for a crime after a prisoner is sentenced, and he does not benefit from that mitigation of punishment, does not constitute an arbitrary classification or deny the prisoner equal protection of the law").

direct appeal, we rejected his contention that Section 6105's prohibition of gun ownership by him violated his right to bear arms. *See Grove*, 1135 MDA 2014, at 23. Grove's recasting of that argument under the Equal Protection Clause cannot salvage it.

The 1995 amendment to Section 6105 was intended to broaden the class of convicted felons who would not be entitled to possess a firearm. *Gillespie*, 821 A.2d at 1224-25. Though that expansion restricted the gun-ownership rights of more felons than had previously been burdened, there was nothing irrational or invidious about the Legislature's purpose. As the Pennsylvania Supreme Court stated when reviewing the constitutionality of a similar federal firearms statute:

> Prohibiting convicted felons from buying firearms is rationally connected to the remedial goal of protecting the public from the risk of firearms in the hands of convicted criminals. Appellant stresses his crime was relatively minor and non-violent, and contends the disability imposed by [the federal statute] is not rationally connected to a non-punitive purpose because it is unduly harsh. While Congress could have cast the net less widely than it did in selecting the crimes that would trigger the disability imposed . . .[, t]he legislature need not choose the most narrowly tailored means available when crafting a remedial statute, and preventing felons from purchasing firearms is rationally connected to a non-punitive purpose.

*Lehman v. Pa. State Police*, 839 A.2d 265, 273 (Pa. 2003). Although the Court in *Lehman* was not there dealing with an equal protection issue, its sentiments are directly applicable here. The fact that the 1995 amendment, in conjunction with the 1978 amendment to the criminal trespass law, affects felons like Grove more substantially than it affects others does not

mean that it is invalid. The statutory change was made for a rational purpose.

Moreover, even if Grove's invocation of his constitutional self-defense rights would require us to employ a more substantial level of scrutiny than the rational basis test, we conclude that the change in the law satisfies a sufficient government interest to withstand equal protection scrutiny. *See McKown*, 79 A.3d at 689-91 (applying intermediate scrutiny and concluding that the statute at issue served the important government interest of protecting the public from persons who should not carry firearms and was substantially related to the achievement of that objective). We have no doubt that the statutory amendment was valid.

For these reasons, Grove's equal protection claim, whether grounded in the statute itself or in its enforcement, lacks merit. Grove therefore cannot succeed on his claim that his counsel was ineffective in raising this issue, and, accordingly, we agree with the PCRA court that it did not err in denying relief. *See Andrews*, 158 A.3d at 1263.

### *Affirmative Defense under Section 6105(a)(2)(i)*

Next, Grove asserts that his trial counsel was ineffective for not presenting the affirmative defense set forth at 18 Pa.C.S. § 6105(a)(2)(i):

> A person who is prohibited from possessing, using, controlling, selling, transferring or manufacturing a firearm . . . shall have a reasonable period of time, not to exceed 60 days from the date of the imposition of the disability under this subsection, in which to sell or transfer that person's firearms to another eligible person who is not a member of the prohibited person's household.

Grove argues that he qualifies for this defense because he lacked a reasonable opportunity to sell or transfer his firearms. Grove contends that when Section 6105 was amended in 1995 to add criminal trespass as an enumerated offense, he was not "subjectively aware" that he was no longer permitted to possess firearms and therefore "had no opportunity whatsoever to avail himself of the statutory affirmative defense." Grove's Brief at 53.

Grove argues in the alternative that "'the date of the imposition of the disability' is the date on which a judgment of conviction is entered for an enumerated offense." Grove's Brief at 53. When Grove was convicted of criminal trespass in 1978, his conviction was not an enumerated offense. Therefore, Grove argues that there is no date of imposition of the disability, and he did not have a reasonable time after the imposition of the disability to dispose of his firearms. *Id.*

This Court has held that Section 6105(a)(2)(i) provides an affirmative defense for "persons who were disqualified from gun possession/control by [18 Pa.C.S. § 6105(a)(1)] but who did not yet have a reasonable opportunity to dispose of their firearms." *Commonwealth v. Alvarez-Herrera*, 35 A.3d 1216, 1218 (Pa. Super. 2011). We have also held that, for purposes of Section 6105(a)(2)(i), the date of imposition of the disability is the date of conviction of an enumerated offense. *See Commonwealth v. Appleby*, 856 A.2d 191, 194 (Pa. Super. 2004).

Here, as Grove points out, the date of his conviction for criminal trespass could not be "the date of the imposition of the disability" because Grove was not prohibited from possessing firearms until 1995. However, it does not follow, as Grove contends, that there was never a date of imposition of disability. Rather, as we stated in Grove's direct appeal, that date is the date that his previous conviction became an enumerated offense. **See Grove**, 1135 MDA 2014, at 9 ("as of the effective date of the [1995] amendment [to § 6105], Grove was prohibited from owning or possessing a firearm"). Grove had sixty days from October 11, 1995,[26] to sell or transfer any guns that he owned. He did not do so, and thus the Section 6105(a)(2)(i) defense was not available to him.

We previously rejected Grove's argument that he was entitled to notice when Section 6105 was amended in 1995. **See Grove**, 1135 MDA 2014, at 22-23 ("ignorance of the law is not a defense"). We therefore are unpersuaded by Grove's argument that he did not have a reasonable time to dispose of his guns because he did not know he was prohibited from possessing them.

Because Grove's underlying claim regarding the Section 6105(a)(2)(i) defense is meritless, we agree with the PCRA court that Grove is not entitled

---

[26] The amendment was enacted on June 13, 1995, and effective 120 days later (October 11, 1995).

to relief on his claim that his trial counsel was ineffective for failing to raise this defense. *Andrews*, 158 A.3d at 1263.

## Ex Parte Communications (Grove's Claim IV)

In his final claim, Grove contends that the PCRA court erred by failing to hold an evidentiary hearing on his claim that his right to an impartial tribunal had been violated due to alleged *ex parte* communications between Judge Lunsford and members of the District Attorney's Office. Grove asserts that his "belief that his case may have been compromised by *ex parte* communications was well-founded," and that, had he been given the opportunity to prove the existence of *ex parte* communications, he would be entitled to automatic reversal of his convictions, without proving prejudice. Grove's Brief at 62.

In fact, the PCRA court held several evidentiary hearings. Grove's claim thus appears to be that the PCRA court should have allowed additional testimony before ruling on his claim regarding *ex parte* communications. However —

> [T]he right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

*Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa. Super. 2012) (citations omitted). "[A]n evidentiary hearing is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim . . . ." *Commonwealth v. Roney*, 79 A.3d 595, 605 (Pa. 2013) (quotation marks and citations omitted), *cert. denied*, 135 S. Ct. 56 (2014).

This Court has held that *ex parte* communications require the grant of a new trial only where there is evidence that the trial court judge was influenced by those communications. *Commonwealth v. Barnyak*, 639 A.2d 40, 44 (Pa. Super.) ("even if the ex parte communications were improper, in the absence of evidence of influence, there is no basis for the grant of a new trial"), *appeal denied*, 652 A.2d 1319 (Pa. 1994), *cert. denied*, 515 U.S. 1130 (1995); *see also Commonwealth v. Carpenter*, 725 A.2d 154, 169 n.9 (Pa. 1999) (citing *Barnyak*)).[27]

---

[27] Grove cites a number of cases from other jurisdictions where courts have held that the existence of *ex parte* communications requires automatic reversal without any showing of prejudice. These cases are not binding on this Court. Moreover, they are factually distinguishable from this case. *See United States v. Barnwell*, 477 F.3d 844, 847-49 (6th Cir. 2007) (detailing numerous *ex parte* communications regarding jury deliberations); *Smith v. State*, 708 So.2d 253, 255 (Fla. 1998) (holding impartiality of tribunal was compromised where, in *ex parte* communication, prosecutor persuaded judge to change his mind about an order); *Abdygapparova v. State*, 243 S.W.3d 191, 210 (Tex. Ct. App. 2007) (holding that content of *ex parte* communications, combined with judge's comments about the defendant, admission of improper evidence, and denial of the defendant's request for an interpreter demonstrated that "the absence of an impartial judge infected the entire trial process").

Instantly, the PCRA court concluded that Grove's claim regarding *ex parte* communications "involve[d] only the effect of the alleged ex parte contacts on [Grove's] sentences" and became moot in light of its grant of sentencing relief for Grove's claim regarding his prior record score. PCRA Ct. Op. at 1. The court reached this conclusion because: "With respect to the firearms charge, there were no factual issues in dispute and no evidentiary rulings beyond the constitutional issues presented to the trial [c]ourt. With respect to the Cruelty to Animals charge, [Grove] entered a guilty plea." ***Id.*** Upon a careful review of the record, we agree.

In his PCRA petition, Grove did not explain how the alleged *ex parte* communications affected any of Judge Lunsford's rulings, with the possible exception of his sentencing. In his appellate brief, Grove discusses *ex parte* communications relating to imposition of a "maximum" sentence, Grove's Brief at 62, but he does not identify issues relating to his conviction that might have been affected by such communications.[28] Indeed, in responding to the Commonwealth's appeal of the PCRA court's order permitting discovery pertaining to alleged *ex parte* communications, Grove argued that the PCRA court's grant of sentencing relief rendered the Commonwealth's appeal of that issue moot. The legal rulings made by Judge Lunsford in

---

[28] Grove does make an argument about his request for bail and a furlough for a medical condition. Grove's Brief at 62. Those matters do not relate to his conviction, and, in any event, Grove has now been released from incarceration on his own recognizance. Trial Ct. Order, Jan. 25, 2017, ¶ 5.

connection with his firearms conviction were affirmed by this Court on Grove's direct appeal, and, as the PCRA court noted, the factual issues were undisputed. On these facts, the trial court was not required to explore this issue further, since there was no prospect that it would result in a new trial. Grove was not entitled to unlimited hearings to prove his speculative claims. **See Roney**, 79 A.3d at 605.

Thus, we agree with the PCRA court's conclusion that, at most, the alleged *ex parte* communications could have affected Grove's sentencing, and in light of the PCRA court's grant of a new sentencing hearing on other grounds, the *ex parte* communications claim was moot. Grove therefore is entitled to no further relief on this issue.

For all these reasons, we discern no error of law by the PCRA court in denying Grove's petition in part, and we therefore affirm the order below. **See Andrews**, 158 A.3d at 1263.

Order affirmed. Application for consolidation dismissed as moot with regard to Nos. 358 MDA 2017 and 1158 MDA 2017, and denied with regard to **Commonwealth v. McClure**, 145 MDA 2017.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2017