**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NAFIS ANTUAN FAISON | : | |
| | : | |
| Appellant | : | No. 1423 MDA 2017 |

Appeal from the PCRA Order July 13, 2017
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0000126-2014

BEFORE:   BOWES, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED DECEMBER 03, 2018**

Nafis Antuan Faison appeals from the order denying him relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541–46. Faison asserts that the PCRA court erred in denying his claim that he was denied effective assistance of counsel because his trial attorney did not file a pre-trial motion to suppress. We affirm

The facts are as follows. In November 2013, the Lycoming County Court of Common Pleas issued an order under Section 5773 of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. §§ 5701-5782, authorizing the disclosure of tracking data on Faison's cell phone number. *See* 18 Pa.C.S.A. § 5773. The court issued the order following an application submitted by the Commonwealth, which included an affidavit of probable cause written by then-Trooper Robert Lombardo of the Pennsylvania State Police. (Trooper Lombardo was subsequently made a corporal of the State

_____
* Retired Senior Judge assigned to the Superior Court.

Police). In the affidavit, Corporal Lombardo stated that a warrant existed for Faison's arrest on drug charges, and described that during the underlying investigation, a confidential informant had made four controlled drug purchases from Faison, whom his customers called "Mickey." **See** Affidavit of Probable Cause in Support of Application for the Disclosure of Mobile Communication Tracking Information, 11/19/13, at 2. According to Corporal Lombardo's affidavit, attempts to locate Faison following the issuance of the arrest warrant had been unsuccessful. The affidavit asserted that Faison could be located using the data from a certain telephone number that a parolee had provided to a probation and parole agent.

Following the issuance of the Order authorizing the disclosure of Faison's cellular data, Corporal Lombardo used the data to determine that Faison was located at a particular residence in Williamsport. On the afternoon of December 12, 2013, at the request of Corporal Lombardo, multiple law enforcement agencies, including the state and local police, began surveilling that residence in hopes of finding Faison. As trial testimony later established, Faison was indeed at that location, in the second-floor apartment belonging to his friend, Demetrius Simpson. Simpson had allowed Faison to stay in the apartment overnight. Simpson's nine-year-old son was also in the apartment.

Over the course of the evening, the police observed several people visit the second-floor apartment and stay for only a short period of time. Trooper Lombardo stopped one of these people, Joshua Colley, after Colley left the apartment. Trooper Lombardo frisked Colley and found a small amount of

illegal drugs, and arrested him. During the arrest, Colley told Corporal Lombardo that he had seen Faison inside the apartment. Following the arrest, Trooper Kenneth Fishel, who had been surveilling the residence, informed Corporal Lombardo that he had spotted Faison standing outside the door to a third-floor apartment.

Corporal Lombardo and multiple law enforcement officers returned to the apartment building and ascended a staircase to the second floor. Corporal Lombardo knocked on the door to the second-floor apartment. Faison jumped out of a second-floor window and fled on foot, and the police entered and secured the apartment. While the police were in a central room in the apartment, they observed an un-zippered black backpack containing what appeared to be bags of cocaine.

An officer caught Faison and found that he was carrying nearly $4,000 in cash and a small amount of illegal drugs. Simpson, who had answered the door to the apartment after Corporal Lombardo knocked, was also arrested and taken for questioning, but ultimately was not charged with any criminal offenses.

Several officers stayed in the apartment while Trooper Fishel applied for a search warrant. During this time, Trooper Lancer Thomas took Simpson's son, who was standing outside on the balcony and shivering, back inside the apartment to find clothing. While doing so, Trooper Thomas also saw the un-zippered backpack containing bags of cocaine. Trooper Fishel's search warrant was granted, and the police searched the apartment and recovered the black

backpack, which contained over 500 grams of cocaine and a scale; a box in a closet which contained rubber bands, small plastic bags, a stamp pad, and a brown piece of paper with heroin residue on it; and a tan jacket with a bag of cocaine in its right pocket.

Faison was charged with possession with intent to deliver a controlled substance[1] and related drug offenses. Faison did not file a pre-trial motion to suppress any evidence at trial. At the conclusion of trial, a jury found Faison guilty, and the trial court thereafter sentenced him to an aggregate term of five to ten years' incarceration.[2] We affirmed Faison's judgment of sentence, and the Pennsylvania Supreme Court denied allowance of appeal on October 25, 2016.[3]

Faison filed the instant PCRA Petition *pro se* on December 1, 2016, alleging that his trial counsel was ineffective for failing to file a motion to suppress the evidence against him, and requesting an evidentiary hearing. The PCRA court appointed counsel to represent Faison, and on May 10, 2017,

---

[1] 35 P.S. § 780–113(a)(30).

[2] Faison had his right to direct appeal reinstated *nunc pro tunc* in November 2015 following his filing of a PCRA petition.

[3] *See Commonwealth v. Faison*, 151 A.3d 1150 (Pa.Super.), *appeal denied*, 160 A.3d 756 (Pa. 2016). While Faison's direct appeal was pending, Faison filed a PCRA petition, which was dismissed as premature by the PCRA court.

counsel filed a Motion to Withdraw and a **Tuner/Finley**[4] "no merit" letter. On May 15, 2017, Faison filed a *pro se* Supplemental PCRA Petition.[5]

On June 22, 2017, in an Opinion and Order explaining its reasoning, the PCRA court granted counsel leave to withdraw and gave Faison notice of its intentions to dismiss Faison's Petition in 20 days pursuant to Rule 907 of the Rules of Criminal Procedure. Faison did not respond to the notice, and the court denied his Petition on July 13, 2017.

Faison filed a timely notice of appeal, and raises the following issues:

[1.] Trial counsel had no reasonable basis for his inactions[.]

[2.] Trial counsel was constitutionally deficient for failing to file [a] motion to suppress evidence obtained in violation of [Faison's] constitutional right where [the] affidavit of probable cause to obtain [a] pen register and trap and trace device was insufficient as a matter of law and all evidence obtained as a result was illegally obtained.

[3.] Trial counsel was constitutionally defective for failing to investigate and file a motion to suppress evidence seized in [the] second floor apartment as it was procured as a result of [an] illegal search without search warrant.

[4.] Trial counsel was constitutionally deficient for failing to investigate/file [a] motion to suppress [the] affidavit of probable cause to [search,] based on false averments contained within.

Faison's Br. at 4. The Commonwealth did not submit a brief.

---

[4] **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[5] We note that Faison did not obtain leave from the PCRA court to amend his petition. **See Commonwealth v. Mason**, 130 A.3d 601, 627 (Pa. 2015).

"[I]n reviewing the propriety of an order granting or denying PCRA relief, this Court is limited to ascertaining whether the evidence supports the determination of the PCRA court and whether the ruling is free of legal error." **Commonwealth v. Andrews**, 158 A.3d 1260, 1262-63 (Pa.Super. 2017). A PCRA petitioner is entitled to an evidentiary hearing where the petition raises an issue of material fact, which, if resolved in the petitioner's favor, would justify relief. **Commonwealth v. Simpson**, 66 A.3d 253, 260 (Pa. 2013).

A petitioner is eligible for relief under the PCRA when he pleads and proves by a preponderance of the evidence that his conviction resulted from ineffective assistance of counsel. **See** 42 Pa.C.S.A. § 9543(a)(2)(ii). A PCRA petitioner will only prevail on a claim that trial counsel was ineffective through pleading and proving each of the following: "(1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error." **Commonwealth v. Grove**, 170 A.3d 1127, 1138 (Pa.Super. 2017) (quoting **Commonwealth v. Andrews**, 158 A.3d 1260, 1263 (Pa.Super. 2017). A failure to plead or prove any prong will defeat an ineffectiveness claim. **Id.** at 1138.

## I. Waiver

The PCRA court first concluded that Faison waived his right to PCRA relief under 42 Pa.C.S.A. § 9543(a)(3). **See** PCRA Court Opinion, filed October

20, 2017, at 2. In its Rule 1925(a) opinion, the court explained that the claims were waived because "Faison himself directed his attorney not to pursue pre-trial motions and instead focus on trying to obtain relief pursuant to Rule 600." *Id.*[6]

The PCRA requires that for a petitioner to be eligible for relief, he or she must prove that "the allegation of error has not been previously litigated or waived," 42 Pa.C.S.A. § 9543(a)(3), and states that, "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, . . . on appeal[,] or in a prior state postconviction proceeding." *Id.* at § 9544(b). An assertion of ineffective assistance of counsel overcomes the bar to waived issues. *Commonwealth v. Lambert*, 765 A.2d 306, 324 (Pa.Super. 2000).

The PCRA court is correct in its conclusion that the unfiled suppression motion has been waived, but the distinction the PCRA court failed to recognize is that Faison does not directly advocate for the suppression of evidence, but argues that trial counsel was *ineffective* in relation to pursuing a motion to suppress. Faison has not waived his ineffectiveness claims under Section 9543(a)(3), as he was unable to raise these claims prior to the instant collateral petition. *See Commonwealth v. Holmes*, 79 A.3d 562, 576 (Pa. 2013) (holding that aside from certain exceptions not applicable here, claims

---

[6] Rule 600(B) provides that a criminal defendant is not to be held in pre-trial incarceration in excess of 180 days, and Rule 600(A) provides that the Commonwealth shall commence trial within 365 days. *See* Pa.R.Crim.P. 600(A), (B).

of ineffective assistance of counsel are to be deferred until collateral review). We therefore address Faison's ineffectiveness claims.

## II. The Cell Phone Data Authorization

Faison argues that his trial counsel was ineffective for failing to file a motion to suppress because the affidavit that supported the authorization of the disclosure of his cell phone data was insufficient to establish probable cause. According to Faison, the affidavit "contained vague and conclusory averments" and was based on double hearsay, because the affiant was not privy to the conversation between the parole agent and the parolee, there was no information regarding the reliability of the parolee, and there was no basis given for the parolee's knowledge that the phone number belonged to Faison. Faison's Br. at 19. Faison argues that because the warrant for the tracking information lacked probable cause, and Faison was arrested using the tracking information, the evidence recovered at the time of Faison's arrest was tainted.[7]

The standard for determining whether probable cause to support the issuance of wiretaps is the same as that used to determine probable cause for search warrants. *See Commonwealth v. Iannelli*, 634 A.2d 1120, 1127 (Pa. 1993) (citing *Commonwealth v. Doty*, 498 A.2d 870, 881-82 (Pa.Super. 1985)). Hearsay alone may form the basis for an affidavit of probable cause

---

[7] Faison does not argue that the underlying warrant for his arrest lacked probable cause.

"as long as the issuing authority has been provided with sufficient information to make a 'neutral' and 'detached' decision about whether" probable cause existed. **Commonwealth v. Huntington**, 924 A.2d 1252, 1255 (Pa.Super. 2007). The issuing authority is to review the assertions in the affidavit, "including the 'veracity' and 'basis of knowledge' of persons suppling hearsay information," and "make a practical, common-sense decision" as to whether probable cause exists under the totality of the circumstances. **Commonwealth v. Melilli**, 555 A.2d 1254, 1261 (Pa. 1989) (quoting **Illinois v. Gates**, 462 U.S. 213, 238 (1983)).

"In assessing an informant's reliability, a presumption exists that the information is trustworthy when it has been provided by an identified witness." **Huntington**, 924 A.2d at 1255; **see, e.g., Commonwealth v. Klimkowicz**, 479 A.2d 1086, 1088 (Pa.Super. 1984) (holding that warrant based on an affidavit containing double hearsay was valid where the magistrate found the initial source of information to be reliable). On appeal, we need only to ascertain that there was a "substantial basis" for the issuing authority to conclude that probable cause existed. **Melilli**, 555 A.2d at 1261 (quoting **Gates**, 462 U.S. at 238-39).

Here, the PCRA court determined the affidavit supporting the order for cell phone tracking data supplied sufficient probable cause to believe that Faison could be located using information from the telephone number provided in the affidavit. The court came to this conclusion because "[l]aw enforcement

obtained reliable information from a *known* parolee" who was "specifically identified and known to law enforcement, [and] who could be held accountable for false information provided to law enforcement." PCRA Ct. Op. at 3-5 (emphasis in original). To these observations, we add that the affidavit also provided the name of the parole agent, the date and time of the interview between the parole agent and parolee, and stated that the parolee told the parole agent that Faison was "in the Lycoming area and using the street name of [`]Mike[']," which is similar to the name "Mickey" that Faison used during the controlled drug buys in the underlying investigation leading to the issuance of the arrest warrant. *See* Affidavit of Probable Cause in Support of Application for the Disclosure of Mobile Communication Tracking Information at 2.

We therefore hold that based on the averments in the Affidavit there was a substantial basis for the issuing court to conclude that probable cause existed to support the authorization of the disclosure of the cell phone data. A motion to suppress on this basis would therefore have been lacking in merit, and so we affirm the PCRA court's conclusion that Faison's trial attorney was not ineffective for failing to file one.

### III. The Entry and Protective Sweep

Faison argues that his trial counsel was ineffective for failing to file a motion to suppress on the basis that the police illegally entered and searched Simpson's apartment before they obtained a search warrant. Faison first argues on appeal that the PCRA court erred in concluding that Colley

purchased drugs at the apartment, which was one of the reasons that the PCRA court found justified the entry of the officers. **See** PCRA Ct. Op. and Order, filed 6/22/17, at 6 (stating that law enforcement's entry was legal because, in part, "a witness" had just purchased drugs at the apartment).

Faison did not raise this issue with the PCRA court prior to his appeal, either in his PCRA Petition or in response to the court's Opinion and Order giving notice of its intent to dismiss the Petition, and thus it is waived. **See** Pa.R.A.P. 302(a) (providing that issues cannot be raised for the first time on appeal). Regardless, the level of belief that law enforcement possessed regarding whether Colley had purchased drugs in the apartment at the time of their initial entry is of no moment. The police did not claim to have entered the apartment based on probable cause evidence of drug dealing, but based on their belief that Faison, for whom they had an arrest warrant, was located in the apartment. **See** N.T. at 97 (Trooper Lombardo testifying that the police entered the apartment because they knew that Faison was inside).

Next, Faison contends that the police entered the apartment after they saw Faison leave, and that they had no grounds to do so without exigent circumstances not of their own creation and articulable circumstances to support a protective sweep. Faison's Br. at 27.

Police do not violate the privacy rights of the subject of an arrest warrant when they enter the home of a third party, without a search warrant related to that address, in order to execute the arrest, provided they have a

reasonable belief that the subject of the arrest warrant is inside or is living there. *See Commonwealth v. Muniz*, 5 A.3d 345, 350-52 (Pa.Super. 2010) (relying on *Commonwealth v. Stanley*, 446 A.2d 583 (Pa. 1982) and *Commonwealth v. Conception*, 657 A.2d 1298 (Pa.Super. 1995)). When executing an arrest, police may perform a "protective sweep" of their location, without first obtaining a search warrant, to ensure the absence of any individuals that may pose a threat to their safety, so long as the officers possess "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie v. Maryland*, 494 U.S. 325, 337 (1990).

Faison argues that *Steagald v. United States*, 451 U.S. 204 (1981), would have controlled his suppression issue. In *Steagald*, the United States Supreme Court held that the police cannot execute an arrest warrant by entering the home of a third party without a search warrant. *Id.* at 216. However, in *Steagald*, the third party homeowners, the defendants in that case, raised the issue. *Id.* at 212. While *Steagald* controls in that situation, when the issue of privacy rights is instead raised by the subject of an arrest warrant who was arrested in the home of a third party, as in the instant case, the same protections do not apply. *See Commonwealth v. Romero*, 183 A.3d 364, 379 n.6 (Pa. 2018) (differentiating between cases in which the issue of entry without a search warrant was raised by the subject of the arrest warrant or the third-party homeowners, and stating that *Steagald* controls in

the latter scenario); *Muniz*, 5 A.3d at 350-52; *Commonwealth v. Martin*, 620 A.2d 1194, 1196 (Pa.Super. 1993).

Here, the PCRA court noted that the police had identified that Faison was inside the apartment, and "when" Simpson opened the door for the police, "a runner" jumped out of a second floor window. The PCRA court concluded that the police "had good reason to secure the apartment" at that point because they "would be uncertain as to who was at the apartment, and not all of law enforcement would immediately know whether the fugitive was the runner or not." PCRA Ct. Op. at 5.

The record evidence supports the conclusion that at the time they approached the apartment, the police reasonably believed that Faison was inside. The cell data had led them to that location, Colley told Trooper Lombardo that Faison was in the second floor apartment, and Trooper Fishel saw Faison standing outside a door of the apartment building.

Moreover, the evidence demonstrates that the police reasonably believed that there were multiple people inside the apartment and that the police entered at approximately the same time "a runner" fled through a window on the opposite side of the building. Nothing suggests that the police knew that the "runner" was Faison. Corporal Lombardo testified that after he knocked on the apartment door and announced that he was a police officer, one of the other officers stationed around the building "said out loud that he

observed somebody else in the residence." ***Id.*** at 92-93, 96-97.[8] Simpson opened the door a few minutes later. ***Id.*** at 96-97. While Corporal Lombardo was at the door speaking with Simpson, he "heard a loud bang-like crash noise," toward the front of the house, and "the next thing [he knew was that] someone came over the radio saying an individual was fleeing." ***Id.*** at 93, 97-98. Corporal Lombardo and other officers then entered the residence. ***Id.*** at 98. Trooper Fishel similarly testified "brief chaos erupted" when Faison jumped out of the window and that half of the officers descended the stairs to chase him. ***Id.*** at 72-73.

Because the police possessed a reasonable belief that Faison was located in the apartment, they were permitted to enter in order to execute the arrest warrant and conduct a protective sweep for other persons. Faison's argument that the police should have aborted their plans to enter when some officers observed a person flee the apartment is meritless, as the two events occurred simultaneously and it was unclear to the entering officers that it was Faison who had, in fact, fled.

Faison next argues that Simpson's trial testimony established that the police "searched" the house immediately upon entry, prior to the issuance of the search warrant.

---

[8] Because the observation of the other officer was hearsay, it was not admitted for its truth. ***See*** N.T. at 93. Still, we find the observation relevant insofar as it relates to the beliefs the officers.

A protective sweep "is for persons" and "cannot be lengthy or unduly disruptive." *Commonwealth v. Crouse*, 729 A.2d 588, 598 (Pa.Super. 1999). "[P]olice officers may make cursory visual inspections of spaces immediately adjacent to the arrest scene, which could conceal an assailant," and, if articulable facts exist which justify an officer's fear for the safety of himself and others, the officer can also search for attackers further from the place of arrest. *Commonwealth v. Taylor*, 771 A.2d 1261, 1267 (Pa. 2001).

Here, the PCRA court stated that the police "secured" the apartment at the time of their entry. PCRA Ct. Op. at 5. The testimony of law enforcement officers consistently referred to the initial "search" in the same terms as a protective sweep. Trooper Thomas testified that after Faison was arrested, he assisted other law enforcement officers in "securing" the apartment. *Id.* at 104. Corporal Lombardo testified that after the officers entered the residence, they "cleared the residence for officer safety." *Id.* at 93, 98. Trooper Fishel did not testify regarding the initial sweep of the apartment, but his affidavit says the officers "secured" the apartment and occupants. Affidavit at 2. In contrast, Trooper Thomas's testimony regarding the full search, after the search warrant was issued, described the process of drawing a diagram of the apartment and numbering each room in order to track recovered evidence. *See* N.T. at 114-16.

Faison has offered no facts to contradict the PCRA court's conclusion that the officers' performed a protective sweep, rather than a full search, at

- 15 -

the time of Faison's arrest. While Simpson testified that the officers "searched" the home after their entry, when he was detained in the kitchen area, Simpson's testimony did not otherwise indicate that the police exceeded the bounds permitted by a protective sweep for dangerous persons. *See* N.T. at 36. Rather, the testimony indicates that Simpson used the term "search" in its lay meaning, which encompasses the type of search deemed by Pennsylvania law to be a protective sweep permissible in conjunction with an arrest.

Finally, Faison asserts that there was no legal basis for Trooper Thomas' to re-enter and "search" the apartment when he helped gather clothing for Simpson's son. Faison did not argue in his PCRA Petition that Trooper Thomas's re-entry was illegal, and thus, this issue is waived. Pa.R.A.P. 302(a).

Faison has presented no successful arguments for why a motion to suppress the evidence based on the officers' initial entry and sweep of the apartment would have been meritorious, and thus we affirm the PCRA court's conclusion that Faison's trial counsel was not ineffective for failing to pursue one.

### IV. The Search Warrant

Faison's final argument is that his trial counsel was ineffective for failing to file a motion to suppress because the affidavit of probable cause supporting the search warrant contained false statements. Specifically, Faison complains that the affidavit is false in stating that when Faison ran from the residence,

members of law enforcement "entered the second floor apartment and secured the apartment and occupants," and that "multiple cellular telephones were observed lying in different locations of the apartment along with a large amount of suspected cocaine in an unzipped backpack lying on the couch." Faison's Br. at 32 (quoting Affidavit).

The PCRA court found that Faison's claim that the affidavit of probable cause supporting the search warrant contained false averments was without merit because Faison failed to establish any significant or material misstatements in the affidavit. *Id.* PCRA Ct. Op. at 6. Our review confirms the PCRA court's assessment. Faison argues that "Simpson's trial testimony states the police conducted a search. This testimony is corroborated by other law enforcement officials who testified that they indeed performed a protective sweep." Faison's Br. at 32. As explained above, the police were permitted to conduct a protective sweep of Simpson's apartment, and were not obligated to ignore the contraband they saw at that time.

As Faison has not indicated in what way any material statements in the affidavit supporting the search warrant were false, we affirm the PCRA court's conclusion that his trial counsel was not ineffective for failing to file a suppression motion on those grounds.

Because Faison has failed to establish that a motion to suppress would have had merit, we need not consider whether trial counsel had a reasonable

basis for failing to file one. **Grove**, 170 A.3d at 1138. We therefore affirm the order of the PCRA court denying relief.

Order affirmed.

Judge Bowes joins the Memorandum.

Judge Strassburger files a Concurring Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/03/2018