J-A22045-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| OTTO PAXTON | : | |
| | : | |
| Appellant | : | No. 17 EDA 2019 |

Appeal from the PCRA Order Entered November 5, 2018
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0000231-2012

BEFORE: MURRAY, J., STRASSBURGER, J.[*], and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED OCTOBER 16, 2019**

Otto Paxton (Paxton) appeals *pro se* from the order dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. We affirm.

The PCRA court aptly summarized the factual history of this case as follows:

> On June 24, 2011, police conducted a "controlled buy" at the Paxton residence located at 2407 Bloomsdale Road, in Bristol Township, Bucks County using a confidential informant.[1] On that date, a surveillance officer observed [Paxton] arrive at the residence driving a Volkswagen registered to him at that address. [Paxton] met briefly with his brother, William Paxton, outside the residence, then went inside where he remained for several minutes before leaving the property. Shortly thereafter, a

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Paxton's mother owned the residence but did not live there.

surveillance officer observed the confidential informant, William Paxton and a female enter the residence. A few minutes later, the three of them came back outside. The confidential informant then left the residence, proceeded to a prearranged location and turned over two bags containing white powder to police. The substances were later analyzed and determined to be 0.44 grams of cocaine base and 0.1 grams of cocaine base.

On July 7, 2011, a second "controlled buy" occurred at the residence. On that date, a surveillance officer observed two vehicles registered to [Paxton] parked in front of the residence, a black Ford F-150 and a black Cadillac DeVille. A surveillance officer observed the confidential informant arrive and enter the Paxton home where he remained for several minutes. The surveillance officer observed the confidential informant speaking to William Paxton at the doorway of the residence. The confidential informant then left the residence, proceeded to a prearranged location and turned over a bag containing white powder to police. The substance was later analyzed and determined to be 0.56 grams of cocaine base.

On July 12, 2011, police executed a search warrant at the Paxton residence. When police arrived, William Paxton was inside the residence. A search of his person resulted in the seizure of a plastic bag filled with a mix of rice and 2.0 grams of cocaine base.

During the search of the residence police found various documents belonging to [Paxton] and William Paxton on the dining room table. With regard to [Paxton], investigators found the current registration card for [his] black Cadillac. Investigators also found a document addressed to [Paxton] at the Bloomsdale Road address regarding emergency medical services he received in September of 2010.

There were three bedrooms in the residence. The bedroom identified at trial as bedroom number one belonged to William Paxton. During a search of that bedroom, police recovered a loaded Hi Point 9-millimeter handgun with an obliterated serial number from the hood of a sweatshirt. Numerous rounds of 9-millimeter ammunition were found in a sock. Baggies containing white rice, cocaine and a small amount of marijuana were also found. The bedroom closet was equipped with a deadbolt lock. The key was in the lock. During the search of that closet, police

recovered a Stallard Arms 9-millimeter handgun, a green zip lock bag containing cocaine and U.S. currency totaling $1,850.

The bedroom identified at trial as bedroom number two belonged to [Paxton]. The door to [Paxton's] bedroom was padlocked when police arrived. After gaining entry by force, police recovered two handguns. A Jennings 9-millimeter semiautomatic handgun, loaded with nine rounds, was located on a chair. A Bryco Arms .380 semiautomatic handgun with an obliterated serial number was found in a holster in a box near the bed. Neither handgun was registered. In a bag next to the bed, police found a box with loose ammunition. In the bottom drawer of a dresser, police found mail addressed to [Paxton] and a sawed-off shotgun. A vest containing twenty-four rounds of shotgun ammunition was found hanging in the closet. Inside another plastic bag, police found a box containing rifle and pistol ammunition.

The third bedroom served as a storage room. Inside that room police found a pistol cleaning kit and mail addressed to [Paxton] at the Bloomsdale Road address. Inside the closet of that room, police found two cigar boxes filled with ammunition, a digital scale with white residue, latex gloves, and three razor blades wrapped inside of a napkin, all with white residue on them. The white material on the scale and razor blades was tested and was identified as being cocaine base.

Ammunition for the weapons seized from [Paxton's] bedroom and from William Paxton's bedroom and ammunition for other types of firearms was found throughout the residence.

On July 13, 2011, the day after the search warrant was executed, police returned to the residence and observed [Paxton] removing items from the home.

(PCRA Court Opinion, 5/06/19, at 1-4) (record citations and most footnotes omitted).

The cases against Paxton and William Paxton (William) were joined for purposes of a jury trial. On April 27, 2012, Paxton was convicted of Possession of a Firearm with Altered Manufacturer's Number, Prohibited Offensive

Weapons, Possession of a Firearm by a Person Prohibited, and Use/Possession of Drug Paraphernalia.[2]

The trial court granted defense counsel's request to defer sentencing for preparation of a pre-sentence investigation report (PSI). On August 22, 2012, the court sentenced Paxton to an aggregate term of not less than twelve and one-half nor more than twenty-five years' incarceration. Paxton thereafter litigated a successful PCRA petition reinstating his direct appeal rights. This Court affirmed his judgment of sentence on May 4, 2016.

On May 16, 2016, Paxton, acting *pro se*, filed the instant PCRA petition. Appointed counsel filed amended PCRA petitions. Newly-appointed counsel filed a **Turner**/**Finley**[3] no merit letter and motion to withdraw as counsel. On October 5, 2018, the PCRA court granted counsel's motion to withdraw and issued notice of its intent to dismiss the PCRA petition without a hearing, **see** Pa.R.Crim.P. 907(1). Paxton then filed a response thereto. The PCRA court entered its order dismissing the petition on November 5, 2018. This timely appeal followed.

Paxton argues that PCRA counsel was ineffective for failing to litigate the issue of trial counsel's ineffectiveness because trial counsel was ineffective

---

[2] 18 Pa.C.S. §§ 6110.2, 908(a), 6105(a)(1) and 35 P.S. § 780-113(a)(32).

[3] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988).

for failing to file a motion to suppress the evidence obtained from the search of the Paxton residence because it was not supported by probable cause. He also contended that trial counsel was ineffective for requesting a PSI report that contained damaging information concerning his incarceration.[4]

"The law presumes counsel has rendered effective assistance." **Postie**, **supra** at 1022 (citation omitted). "In general, to prevail on a claim of ineffective assistance of counsel, a petitioner must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." **Id.** at 1023 (citation omitted). The petitioner must demonstrate that: "(1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error." **Commonwealth v. Grove**, 170 A.3d 1127, 1138 (Pa. Super. 2017), *appeal denied*, 185 A.3d

---

[4] Although the Commonwealth asserts waiver of these claims, we find that Paxton preserved them by raising them, albeit inartfully, in his Rule 907 response. (**See** Commonwealth's Brief, at 17-18; Rule 907 Response, at 1-3).

967 (Pa. 2018) (citation omitted). "The petitioner bears the burden of proving all three prongs of the test." **Postie**, **supra** at 1023 (citation omitted).[5]

Instantly, as noted above, Paxton's case was joined with William's case for purposes of trial. Although Paxton's counsel did not file a motion to suppress the search warrant for the Paxton residence, William's attorney did file such a motion. Paxton's attorney was present at the suppression hearing and the court offered him the opportunity to ask questions and argue. (**See** N.T. Suppression, 4/23/12, at 18-19, 26). The court, after hearing testimony and argument on the issue, denied the suppression motion, finding that the warrant was supported by probable cause. (**See id.** at 33-34). Because the suppression issue was fully litigated before Paxton's trial, at a proceeding in which his trial counsel participated, he has not demonstrated that trial counsel was ineffective or that he suffered any prejudice with respect to this claim.

Paxton next asserts that PCRA counsel was ineffective for failing to litigate the issue of trial counsel's ineffectiveness for requesting preparation

---

[5] **See**, **e.g.**, **Commonwealth v. Rykard**, 55 A.3d 1177, 1190 (Pa. Super. 2012) ("Where the defendant asserts a layered ineffectiveness claim[,] he must properly argue each prong of the three-prong ineffectiveness test for each separate attorney. Layered claims of ineffectiveness are not wholly distinct from the underlying claims, because proof of the underlying claim is an essential element of the derivative ineffectiveness claim. In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue.") (citations, quotation marks and some brackets omitted).

of a PSI report that contained damaging information regarding his incarceration. (**See** Paxton's Brief, at 16).

The PCRA court explained that a combination of factors, including Paxton's lengthy and violent criminal history dating back to 1982, the nature of his current offenses, and the sentencing guidelines, led it to impose its sentence, not Paxton's prison misconducts. (**See** PCRA Ct. Op. at 16-17; **see also** N.T. Sentencing, 8/22/12, at 24-28). Accordingly, we agree with the PCRA court's conclusion that Paxton has not demonstrated prejudice with regard to trial counsel's request of a PSI. Thus, Paxton's final ineffectiveness claim fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/19