J-S16017-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ODELL JOHNSON | : | |
| | : | |
| Appellant | : | No. 3572 EDA 2019 |

Appeal from the PCRA Order Entered September 21, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009190-2010,
CP-51-CR-0009191-2010

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ODELL JOHNSON | : | |
| | : | |
| Appellant | : | No. 3573 EDA 2019 |

Appeal from the PCRA Order Entered September 21, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009190-2010,
CP-51-CR-0009191-2010

BEFORE: DUBOW, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED AUGUST 4, 2020**

Odell Johnson appeals from the order dismissing his petition filed under

the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Johnson

claims his trial counsel was ineffective for failing to call a witness. We affirm.

In March 2013, a jury convicted Johnson of first-degree murder, third-

degree murder, carrying a firearm without a license, carrying a firearm on a

public street in Philadelphia, and possessing an instrument of crime.[1] The trial court imposed two sentences of life imprisonment for the murder convictions, and concurrent sentences of imprisonment for the remaining convictions. We affirmed the convictions in November 2014, and the Pennsylvania Supreme Court denied Johnson's petition for allowance of appeal.

The PCRA court summarized the facts from the trial, which we adopt and incorporate herein. *See* PCRA Court Opinion, filed Nov. 16, 2018, at 3-5 ("1925(a) Op."). We will also provide a brief summary. Regina Marshall was involved in a dispute at a recreation center in March 2010. Anthony Marshall, Regina's brother, arrived at the center. Johnson, who was also there, told Anthony that Regina had hit his mother, and then flashed a gun at him. Regina's mother, Rhonda, arrived at the recreation center after the incident. Later that afternoon, Regina and Rhonda were on their way to file a police report concerning the incident at the recreation center, when they saw Johnson. Rhonda pulled up next to Johnson and asked why he had flashed a gun at Anthony. Johnson told Rhonda that he would kill her and her family, and he then punched Regina through the open car window. Rhonda retrieved an ice scraper from her car and chased Johnson, hitting him several times. Reginald Marshall, Regina's father and Rhonda's ex-husband, then arrived. He put Johnson in a "bear hug," and the two men fell to the ground. Johnson

---

[1] 18 Pa.C.S.A. §§ 2502(a), 2502(c), 6106(a)(1), 6108, and 907(a), respectively.

pulled out his gun, and shot and killed Reginald. When police arrived at the scene, they found another man, Darryl Blow, had also been fatally shot.

In August 2015, Johnson filed a *pro se* PCRA petition. The court appointed counsel, who filed an amended petition in May 2017 claiming that trial counsel was ineffective for failing to call Shomari Betancourt as a witness. In May 2018, the court held a bifurcated hearing. The day following the first hearing, Johnson raised a claim that trial counsel was ineffective for failing to call Carla Hayes Dantzler as a witness, claiming she had come forward in the days following the first hearing. The court allowed Johnson to present evidence in support of this claim.

The PCRA court summarized the testimony from the hearing, which we adopt and incorporate here. 1925(a) Op. at 7-9, 11-12. In sum, Betancourt testified that he was with Johnson on the day of the incident. He testified Johnson did not flash his gun at Anthony at the recreation center. Further, he testified Regina slapped Johnson prior to Johnson hitting Regina, and that Rhonda attempted to drive her car into Johnson and Betancourt. Betancourt was no longer at the scene at the time of the shooting.

Dantzler testified, among other things, that she was at the recreation center at the time of the initial dispute and did not see Johnson flash a gun. She further stated that she witnessed the beginning of the second encounter, and that she saw Regina slap Johnson before Johnson slapped Regina. She further saw Rhonda park her car on the sidewalk and exit the car with a window scraper in her hand. Dantzler then left the scene.

Johnson's trial counsel testified that he decided not to call Betancourt because Betancourt was not present at the time of the shooting, and that he believed there was sufficient evidence to establish Johnson acted in self-defense. Counsel noted Rhonda started and continued the incident that led to the shooting and Johnson only fired after Reginald was on top of him. Counsel believed that the jury could find Betancourt's contradictory account not credible.

In September 2018, the court dismissed the PCRA petition. Johnson filed a notice of appeal. This Court quashed the appeal because Johnson failed to comply with **Commonwealth v. Walker**, 185 A.3d 969, 971 (Pa. 2018). That same day, counsel filed a PCRA petition seeking reinstatement of his appellate rights *nunc pro tunc*, which the PCRA court granted. Johnson then filed two notices of appeal that complied with **Walker**.[2]

Johnson raises the following issue:

> Did the PCRA court err in dismissing [Johnson's] Petition because trial counsel was ineffective for failing to call an available witness at trial, because this witness was credible and would have allowed [Johnson] to present compelling self-defense and voluntary manslaughter defenses at trial and would have shown that [Johnson] faced serious provocation and was not the primary initiator of provocation?

Johnson's Br. at 4.

---

[2] Johnson filed a notice of appeal at each docket number, listing both docket numbers. Because a separate notice was filed at each docket, we do not quash this appeal. **See Commonwealth v. Johnson**, --- A.3d ----, 2020 WL 3869723, at *4-5 (Pa.Super. July 9, 2020) (*en banc*).

- 4 -

Johnson notes that Betancourt testified that Johnson did not flash a gun at the recreation center during the initial dispute. Further, at the second interaction between Johnson and the Marshalls, Rhonda Marshall repeatedly attempted to hit Johnson and Betancourt with her car. He further testified that Rhonda and Regina exited their vehicle and attacked Johnson with weapons. Johnson claims that the "vehicle attack description was corroborated by [Dantlzer]." *Id.* at 13. He claims that such testimony contradicted the testimony of Rhonda and Regina Marshall, who he alleged "portrayed [Johnson] as the sole initiator of violence." *Id.* Johnson claims his counsel lacked a reasonable basis for not calling Betancourt. He further claims that he suffered prejudice as he had a viable self-defense theory, given that Rhonda and Regina were the instigators of the violence.

Our review of denial of PCRA relief "is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." *Commonwealth v. Medina*, 92 A.3d 1210, 1214 (Pa.Super. 2014) (*en banc*) (quoting *Commonwealth v. Koehler*, 36 A.3d 121, 131 (Pa. 2012)). We are bound by any credibility determinations made by the PCRA court and supported by the record, but apply a *de novo* standard of review to the PCRA court's legal conclusions. *Id.* at 1214-15.

A petitioner is eligible for relief under the PCRA when he pleads and proves by a preponderance of the evidence that his conviction resulted from ineffective assistance of counsel. *See* 42 Pa.C.S.A. § 9543(a)(2)(ii). A PCRA

petitioner will only prevail on a claim that trial counsel was ineffective through pleading and proving each of the following: "(1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error." *Commonwealth v. Grove*, 170 A.3d 1127, 1138 (Pa.Super. 2017) (quoting *Commonwealth v. Andrews*, 158 A.3d 1260, 1263 (Pa.Super. 2017)). A failure to plead or prove any prong will defeat an ineffectiveness claim. *Id.* (citing *Commonwealth v. Simpson*, 66 A.3d 253, 260 (Pa. 2013)).

To establish that counsel was ineffective for failing to call a potential witness, the PCRA petitioner must demonstrate:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Johnson*, 966 A.2d 523, 536 (Pa. 2009) (quoting *Commonwealth v. Washington*, 927 A.2d 586, 599 (Pa. 2007)).

The PCRA court concluded that Johnson did not establish counsel was ineffective for failing to call Betancourt as a witness. It found counsel's testimony credible, and that counsel made a reasonable strategic decision to not call Betancourt as a witness. The court noted Rhonda admitted at trial that she started the confrontation and that she struck Johnson with an ice scraper

and continued to do so until she heard a gunshot. The court found this testimony gave "[counsel] a reasonable argument for self-defense without calling any witnesses, especially given the risks inherent in calling a defense witness." 1925(a) Op. at 9. The court also found Johnson did not establish he suffered prejudiced by counsel's failure to call Betancourt. It noted Betancourt was not present at the time of the shooting. It further found Betancourt was "a completely incredible witness," noting "[h]is testimony that Rhonda . . . attempted to run over [Johnson] and him with her vehicle at least three times was not believable, and does not in any way undermine confidence in the outcome of the trial." *Id.* at 9-10. The court further found that even if credible, Betancourt's testimony was of limited value to Johnson. Rhonda admitted to chasing Johnson and beating him with a snow scraper. That Betancourt did not see Johnson flash a gun at Anthony does not prove it did not happen. The court also found that Betancourt's testimony that Regina hit Johnson first "would not have altered the jury's decision." *Id.* at 10.

The record supports the PCRA court's conclusions and it did not err in concluding that counsel was not ineffective for failing to call Betancourt has a witness. We agree with the PCRA court. After review of the record, the briefs, the applicable law, and the well-reasoned opinion of the Honorable Glenn B. Bronson, we affirm on the basis of the PCRA court opinion. *See* 1925(a) Op. at 6-10.

Johnson amended his PCRA petition to assert a claim that counsel was ineffective for failing to call Dantzler as a witness. In his appellate brief, he

argues counsel was ineffective for failing to call Betancourt as a witness, with only one mention of Dantzler's testimony. Johnson has abandoned any claim that counsel was ineffective for failing to call Dantzler as a witness. Further, even he had argued the claim, we would conclude it lacks merits and affirm on the basis of the PCRA court opinion. ***See*** 1925(a) Op. at 10-13.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/04/2020

IN THE COURT OF COMMON PLEAS **FILED**
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION 2018 NOV 16 PM 4: 18

OFFICE OF JUDICIAL RECORDS
CRIMINAL DIVISION
FIRST JUDICIAL DISTRICT

|  |  |  |
|---|---|---|
| COMMONWEALTH OF<br>PENNSYLVANIA | : | CP-51-CR-0009190-2010<br>CP-51-CR-0009191-2010 |
| | : | |
| v. | : | CP-51-CR-0009190-2010 Comm. v. Johnson, Odell<br>Opinion |
| | : | |
| ODELL JOHNSON | : | 8191344891 |

OPINION

BRONSON, J.                                                November 16, 2018


On March 15, 2013, following a jury trial before this Court, defendant Odell Johnson was

convicted of one count of first-degree murder (18 Pa.C.S. § 2502(a)), one count of third-degree

murder (18 Pa.C.S. § 2502(c)), one count of carrying a firearm without a license (18 Pa.C.S. §

6106(a)(1)), one count of carrying a firearm on a public street or public property in Philadelphia

(18 Pa.C.S. § 6108), and one count of possessing an instrument of crime ("PIC") (18 Pa.C.S. §

907(a)).[1] The Court immediately imposed the mandatory sentence of life in prison for the first-

degree murder charge (18 Pa.C.S. § 1102(a)(1)) and the mandatory sentence of life in prison for

the third-degree murder charge (42 Pa.C.S. § 9715(a)), to run consecutive to one another.[2] The

sentences on all remaining charges were to run concurrent to the murder sentences. Defendant

was represented at trial, sentencing, and on appeal by Michael E. Wallace, Esquire. On May 23,

---

[1] Defendant was also charged with one count of possession of a firearm by a prohibited person (18 Pa.C.S. § 6105). That charge, which had been severed for a separate trial, was *nolle prossed* by the Commonwealth after defendant was found guilty of the other charges. *See* N.T. 3/15/2013 at 161.

[2] Section 9715(a) provides for a mandatory sentence of life imprisonment for any person convicted of third-degree murder who had previously been convicted at any time of murder or manslaughter at the time of sentencing. *See* *Commonwealth v. Morris*, 958 A.2d 569, 581-82 (Pa. Super. 2008), *appeal denied*, 991 A.2d 311 (Pa. 2010).

2014, the Superior Court affirmed the judgment of sentence, and on November 18, 2014, the Supreme Court denied *allocatur*.

On August 4, 2015, defendant filed a *pro se* petition under the Post Conviction Relief Act ("PCRA"). Stephen T. O'Hanlon, Esquire was appointed to represent defendant on November 23, 2016. On May 31, 2017, Mr. O'Hanlon submitted an Amended Petition, claiming that trial counsel, Mr. Wallace, was ineffective for failing to call Shomari Betancourt as a witness. On May 25, 2018 and May 31, 2018, the Court held a bifurcated evidentiary hearing on the issue. In addition, at the May 31, 2018 hearing, the Court allowed defendant to present evidence for an additional claim, that is, trial counsel's failure to call Carla Hayes Dantzler as a witness, as she had only come forward in the days following the first hearing. N.T. 5/31/18 at 4. On September 21, 2018, after issuing its findings of fact and conclusions of law, the Court entered an order dismissing defendant's PCRA petition.

Defendant has now appealed the Court's dismissal of his PCRA petition, alleging that "[t]he PCRA court erred in dismissing Appellant's PCRA Petition and the court's findings were not supported by the Record and free from legal error because trial counsel was ineffective for failing to call available witnesses at trial, the two Appellant witnesses presented at the evidentiary hearing, because these witnesses were credible and would have allowed Appellant to present compelling self-defense and voluntary manslaughter defenses at trial and would have shown that Appellant faced serious provocation and was not the primary initiator of provocation." Statement of Matters Complained of on Appeal Pursuant to Pennsylvania Rules of Appellate Procedure 1925(b) ("Statement of Matters") at ¶ 1. For the reasons set forth below, defendant's claims are without merit and the PCRA Court's order dismissing his PCRA petition should be affirmed.

2

# I. FACTUAL BACKGROUND

The facts of this case were set forth in this Court's Rule 1925(a) Opinion filed in

defendant's direct appeal as follows:

At trial, the Commonwealth presented the testimony of Maranetta Marshall, Deadra Blow, Rhonda Marshall, Anthony Tappe, Regina Marshall, Natasha Nichols, Dr. Gary Collins, and Philadelphia Police Officers Jerald Moody, Vincent Butler, John Taggart, and Stephen Ahmie. Viewed in the light most favorable to the Commonwealth as the verdict winner, their testimony established the following.

On March 16, 2010, at approximately 6:00 p.m., 16-year-old Regina Marshall was with her friends Jackie, Dominia, Aliah, and Dana outside of a recreation center at the corner of Roumfort Road and Pickering Avenue in the Mt. Airy section of Philadelphia. N.T. 3/13/2013 at 11-12.[3] After Regina Marshall had been at the recreation center for approximately ten minutes, another group of girls began staring at her and her friends. N.T. 3/13/2013 at 13-14. Regina Marshall and her friends became nervous and decided to leave the area. N.T. 3/13/2013 at 14. The other group of girls began following them. N.T. 3/13/2013 at 16. A group of women then pulled up in a car. N.T. 3/13/2013 at 16. Regina Marshall did not know any of the women, who began physically attacking her and her friends. N.T. 3/13/2013 at 17. Regina Marshall managed to get away from the women, at which point she called her mother, Rhonda Marshall, and told her that she was being attacked at the recreation center. N.T. 3/12/2013 at 157-158; 3/13/2013 at 18-19.

Regina Marshall's brother, Anthony Marshall, arrived at the recreation center. N.T. 3/13/2013 at 20. As Anthony Marshall sat in his car, Regina Marshall told him that she had been attacked. N.T. 3/13/2013 at 20-21. At that point, defendant approached Anthony Marshall's car and the two men began arguing. N.T. 3/13/2013 at 22. Defendant told Anthony Marshall that Regina Marshall had hit defendant's mother. N.T. 3/13/2013 at 24. Defendant then pulled his shirt up and flashed a gun that was tucked in his waistband. N.T. 3/13/2013 at 22. As Anthony Marshall drove away from defendant, defendant threw a bottle at the car. N.T. 3/13/2013 at 22-23.

After Anthony Marshall left, the police and Rhonda Marshall both arrived at the recreation center. N.T. 3/13/2013 at 24. Regina Marshall told her mother and the police that one of the women in the crowd had hit her. N.T. 3/12/2013 at 159-160. Rhonda Marshall asked to file a complaint against the woman, but the police, who were attempting to get the crowd to disperse, told her to go home. N.T. 3/12/2013 at 160. Regina and Rhonda Marshall returned home and Rhonda Marshall called her ex-husband, Reginald Marshall. N.T. 3/12/2013 at 163-164.

---

[3] Jackie, Dominia, Aliah, and Dana's last names were not given at trial.

3

She told him what had happened and that she wanted to file a police report. N.T. 3/12/2013 at 163-164. Reginald Marshall told Rhonda Marshall that he would come over on his way to work to assist her. N.T. 3/12/2013 at 163-164.

After approximately one hour, Jackie's grandmother called Rhonda Marshall. N.T. 3/12/2013 at 166-167. She told Rhonda Marshall that the police were at her home, and asked Rhonda Marshall if she wanted to file a police report. N.T. 3/12/2013 at 166-167. Rhonda Marshall replied that she would like to file a report, but that she was waiting for her ex-husband to arrive at the home. N.T. 3/12/2013 at 167-168. Shortly after this call, Aliah's mother called Rhonda Marshall and told her that she, too, was filing a complaint. N.T. 3/12/2013 at 168. Rhonda Marshall waited a few minutes for Reginald Marshall before deciding to first drive to Jackie's house and then Aliah's, in order to file a police report. N.T. 3/12/2013 at 168-169. Rhonda Marshall drove her niece, Natasha Nichols, and Regina Marshall to Jackie's house, but the police had already left. N.T. 3/12/2013 at 168-169. As she was leaving Jackie's house and driving to Aliah's house, Rhonda Marshall called Reginald Marshall to tell him where she was. N.T. 3/12/2013 at 171. He responded that he would be right behind her because he was only a few blocks away. N.T. 3/12/2013 at 171.

As she was driving towards Aliah's house, Rhonda Marshall spotted defendant standing next to a car on the 8500 block of Fayette Street. N.T. 3/12/2013 at 174. Rhonda Marshall pulled up next to defendant and began yelling at him, asking him why he had flashed a gun at her son. N.T. 3/12/2013 at 175-177. Defendant responded by telling Rhonda Marshall that he would kill her and her whole family. N.T. 3/12/2013 at 177. Defendant then punched Regina Marshall in the face through the open window of the car. N.T. 3/12/2013 at 176-177; 3/13/2013 at 37-40, 100-101. Rhonda Marshall then retrieved an ice scraper from the car, got out of the car, and chased defendant while hitting him several times with the scraper. N.T. 3/12/2013 at 178-179; 3/13/2013 at 40-41.

Reginald Marshall then arrived at the scene and put his arms around defendant in a "bear hug." N.T. 3/12/2013 at 179-180; 3/13/2013 at 41-42, 102. The two men fell to the ground. N.T. 3/13/2013 at 43. Defendant then pulled out his gun and shot Reginald Marshall three times, killing him. N.T. 3/12/2013 at 122, 194; 3/13/2013 at 49-50. Rhonda Marshall drove Reginald Marshall to Chestnut Hill Hospital, where he was pronounced dead at 8:14 p.m. N.T. 3/12/2013 at 120-121, 201-202; 3/13/2013 at 51. He had been shot three times, twice in the chest and once in the back. N.T. 3/12/2013 at 121-133, 143.

When the police arrived at the scene of the shooting, they found another man who had been fatally shot lying on the ground across the street in between two parked cars approximately 14 feet away from where Reginald Marshall had been shot. N.T. 3/12/2013 at 43-49, 92-93. That man was identified as Darryl Blow, a friend of Reginald Marshall. N.T. 3/12/2013 at 35-36, 203. Ballistics evidence showed that Mr. Blow had been shot with the same gun that defendant had used to shoot

4

and kill Reginald Marshall. N.T. 3/13/2013 at 128-129. As a result, police concluded that Darryl Blow had accompanied Reginald Marshall to the location, and was also shot and killed by defendant. Near Darryl Blow, police found a small knife, a set of keys, a hat, and an ice scraper. N.T. 3/12/2013 at 47-51, 67. Darryl Blow was taken by ambulance to Albert Einstein Medical Center, where he was pronounced dead at 10:28 p.m. N.T. 3/12/2013 at 134-135. He had been shot once in the abdomen and once in the face. N.T. 3/12/2013 at 134-136.

Trial Court Opinion, filed September 16, 2013, at pp. 2-5.

## II. DISCUSSION

An appellate court's review of a PCRA court's grant or denial of relief "is limited to determining whether the court's findings are supported by the record and the court's order is otherwise free of legal error. *Commonwealth v. Green*, 14 A.3d 114, 116 (Pa. Super. 2011) (internal quotations omitted). The reviewing court "will not disturb findings that are supported by the record." *Id.* Moreover, "where a PCRA court's credibility determinations are supported by the record, they are binding on the reviewing court." *Commonwealth v. White*, 734 A.2d 374, 381 (Pa. 1999) (citing *Commonwealth v. Abu-Jamal*, 720 A.2d 79, 93 (Pa. 1998)).

Defendant's claims pertain to the alleged ineffectiveness of trial counsel. Under Pennsylvania law, counsel is presumed to be effective and the burden to prove otherwise lies with the petitioner. *Commonwealth v. Reid*, 99 A.3d 427, 435 (Pa. 2014). To obtain collateral relief based on the ineffective assistance of counsel, a petitioner must show that counsel's representation fell below accepted standards of advocacy and that as a result thereof, the petitioner was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In Pennsylvania, the *Strickland* standard is interpreted as requiring proof that: (1) the claim underlying the ineffectiveness claim had arguable merit; (2) counsel's actions lacked any reasonable basis; and (3) the ineffectiveness of counsel caused the petitioner prejudice. *Commonwealth v. Miller*, 987 A.2d 638, 648 (Pa. 2009) (citing *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987)). To satisfy the third prong of the test, the petitioner must prove that,

5

but for counsel's error, there is a reasonable probability that the outcome of the proceeding would have been different. *Commonwealth v. Sneed*, 899 A.2d 1067, 1084 (Pa. 2006) (citing *Strickland*, 466 U.S. at 694).

Here, defendant's allegations of trial counsel's ineffectiveness relate to counsel's failure to call two witnesses. When raising counsel's failure to call a witness, "the PCRA petitioner satisfies the performance and prejudice requirements of the *Strickland* test by establishing that: '1) the witness existed; 2) the witness was available to testify for the defense; 3) counsel knew of, or should have known of, the existence of the witness; 4) the witness was willing to testify for the defense; and 5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.'" *Commonwealth v. Johnson*, 966 A.2d 523, 536 (Pa. 2009) (quoting *Commonwealth v. Washington*, 927 A.2d 586, 599 (Pa. 2007)). However, the failure to call a witness "is not *per se* ineffective assistance of counsel, for such decision implicates matters of trial strategy. It is the petitioner's burden to demonstrate that trial counsel had no reasonable basis for declining to call a particular person as a witness." *Commonwealth v. Hammond*, 953 A.2d 544, 558 (Pa. Super. 2008) (internal quotations omitted).

*1. Failure to Present Shomari Betancourt as a Witness at Trial*

Defendant's initial claim raised in his PCRA petition was that trial counsel was ineffective for failing to call Shomari Betancourt as a witness at defendant's trial. Defendant claimed that trial counsel, Mr. Wallace, was aware of Betancourt, and that Betancourt would have provided favorable testimony in support of defendant's "voluntary manslaughter theories." Amended Petition at p. 4. Specifically, defendant argued that Betancourt's testimony would have: (1) undermined the credibility of adverse witnesses; (2) helped demonstrate imperfect self-defense by establishing the threat faced by defendant before the killings; and (3) helped

6